**Law Offices of Weiss & Weiss**
410 Jericho Turnpike, Suite 105
Jericho, New York 11753
Tel: (516) 739-1500/Fax: (516) 739-2189

October 27, 2021

Honorable A. Kathleen Tomlinson, U.S.M.J.
U.S. District Court for the Eastern District of New York
100 Federal Plaza, Courtroom 910
Central Islip, N.Y. 11722-9014

Re:   **INV Holdings Inc., et al. v. Dayus Register & Grille Inc.,**
      **E.D.N.Y. Case No. 2:21-cv-05107-GRB-AKT**

Dear Judge Tomlinson:

We represent Plaintiffs INV Holdings Inc. ("INV") and Advanced Arch Grilleworks, Inc.("AAG") (collectively "Plaintiffs") and submit this letter in opposition to the letter submitted by Defendant Dayus Register & Grille Inc. ("DRG") seeking a 60-day extension of time to answer the Complaint in this action. DRG's request should be denied. DRG seeks an extension under the false pretense it needs time to develop its frivolous inequitable conduct argument, which it has been unable to establish since making that false accusation against Plaintiffs in June 2021. Also, evidence supporting such a claim, which certainly does not exist, could only be obtained through proper discovery methods which DRG seeks to delay. DRG clearly seeks to further delay this action it already delayed for 5 months so it can continue to willfully infringe INV's patents and trademark and continue to undercut AAG's pricing during this extremely tough time in business in an effort to cause Plaintiffs business to suffer.

INV, a New York corporation located in New Hyde Park, New York, owns U.S. Patent Nos. 9,765,988 ("'988 patent") and 10,871,305 ("'305 patent") and U.S. Registration No. 5132735 for the mark PLASTER J-BEAD for use on or in connection with a "metal frame used for metal linear bar grilles." [Complaint, ¶¶ 5, 11-26]. AAG, a New York corporation located in New Hyde Park, New York, is INV's exclusive licensee of the '988 and '305 patents and PLASTER J-BEAD mark and has sold its Plaster J-Bead Grilles, commercial embodiments of the '988 and '305 patents, in the United States since December 2013. [Id., ¶¶ 6, 20, 22].

Defendant DRG, a Canadian corporation, makes and sells the Bar Linear J-Bead Flange Grille and Bar Linear J-Bead Flange Removable Core Grille (collectively "J-Bead Grilles") by copying both the patented products and the name thereof which is a registered trademark of INV. [Id., ¶ 7]. AAG and DRG are competitors. [Id., ¶¶ 29, 32, 34 and 91]. DRG has directly and willfully infringed the '988 and '305 patents by offering to sell and selling in the United States, and importing and shipping into the United States, its J-Bead Grilles which literally contain each element of the claims asserted in the patents. [Id., ¶¶ 40, 67]. DRG has also willfully infringed

INV's PLASTER J-BEAD mark by using the nearly identical and confusingly similar J-BEAD mark in commerce in the United States to sell its infringing J-Bead Grilles. [Id., ¶¶ 91, 96]. DRG in bad faith uses that mark for the same type of goods sold by AAG in the same channels of trade and to the same purchasers, thus misappropriating the expenditures, skill and labor of Plaintiffs and improperly capitalizing on the hard-earned goodwill and reputation established for AAG's Plaster J-Bead Grilles. [Id., ¶¶ 91, 93]. DRG's patent and trademark infringement continues to date and continues to cause Plaintiffs substantial harm. [Id., ¶¶ 65, 85, 98, 109].

Prior to filing a complaint against DRG, Plaintiffs tried to resolve the matter by sending a cease and desist letter dated April 21, 2021 to DRG, stating its J-Bead Grilles infringe the '988 and '305 patents and use of the J-BEAD mark to sell its infringing grilles infringing INV's mark. [**Exhibit A**]. In his May 5, 2021 letter, DRG's first counsel, Mr. Howard, asserted, inter alia, INV's patents were invalid (on-sale bar) and DRG "has evidence of sale of this product at least as early as 2007". [**Exhibit B**, page 2].

On May 18, 2021, Plaintiffs filed a complaint against DRG with this Court for, inter alia, patent and trademark infringement. Before serving Canadian company DRG under the Hague Convention, Plaintiffs' counsel attempted several times to contact DRG's counsel Mr. Howard, but was unsuccessful. [**Exhibit C**]. In a May 21, 2021 email to Mr. Howard, Plaintiffs' counsel stated a complaint had been filed against DRG and Plaintiffs remained willing to discuss the matter and also asked if he would accept service of the Complaint on behalf of DRG if DRG did not want to discuss the matter further. Id. Mr. Howard did not respond.

On June 1, 2021, Mr. Gish advised Plaintiffs' counsel he was retained by DRG. [**Exhibit D**]. In his June 7, 2021 letter to Plaintiffs' counsel, Mr. Gish stated they analyzed and found Plaintiffs' claims frivolous and "publicly available records on the Internet Archive demonstrate...[AAG100, AAG330] were offered for sale by Plaintiffs at least as early as October 23, 2012", i.e. on-sale bar. [**Exhibit E**, pp. 1-2]. In that letter, Mr. Gish made the very same arguments he now makes to the Court and relied on the same pictures of AAG's grilles and instructions [Id., pp. 2, 4] shown at page 2 of his October 21, 2021 letter to the Court to support his extension request to allegedly further investigate DRG's allegations. DRG has already had about 5 months since June 2021 to investigate those issues and its extension request is yet another attempt by DRG to delay Plaintiffs from seeking redress for DRG's patent and trademark infringement. Defendants through all of this time have never argued that they do not infringe the patents and trademarks relating to this case as they cannot. Further, Defendants have not copied the 2012 version that they are claiming is the same product Plaintiffs have patented. Defendants have copied Plaintiffs patented product.

Significantly, in his June 7, 2021 letter, Mr. Gish did not contend more investigation was needed when he wrongly asserted the '988 and '305 patents were invalid under 35 USC § 102(a) (on-sale bar); falsely accused Plaintiffs of inequitable conduct and violating Fed.R.Civ.Proc. 11; and demanded Plaintiffs, among other things, withdraw their complaint with prejudice by July 11, 2021 **or else** he threatened DRG would move for attorney fees and Rule 11 sanctions in the action before the Court, as well as file proceedings in the PTO to invalidate the '988 and '305 patents and cancel INV's mark. [**Exhibit E**, pp. 4, 8]. Mr. Gish's threats and allegations should not have been made if further investigation was needed to support those unfounded allegations.

The parties' counsel tried to resolve this matter until July 7, 2021.  <u>When resolution failed, Plaintiffs' counsel asked Mr. Gish if he would accept service of the May 18, 2021 Complaint on behalf of DRG.  Mr. Gish refused, stating he was not authorized to do so</u>.  Thus, DRG directly caused this action to be delayed as Plaintiffs had to serve Canadian company DRG under the Hague Convention, which takes time to accomplish.  Thus, DRG has already obtained a 4 month extension by refusing to accept service of the complaint, which it clearly knew was going to be served upon DRG under the Hague Convention.  Thus, Plaintiffs in no way caused DRG to delay its alleged needed investigation.  Also, Plaintiffs did <u>not</u> withdraw their May 18, 2021 Complaint by July 11, 2021 as demanded in Mr. Gish's June 7, 2021 letter.  Instead, they sent the complaint to be served under the Hague Convention, which DRG knew they were going to do.  Plaintiffs' May 18, 2021 Complaint which was withdrawn on September 14, 2021 and refiled with the Court the same day given the length of time that had elapsed between filing the May 18, 2021 complaint and that complaint being served on DRG under the Hague Convention.

DRG's on-sale bar and inequitable conduct allegations are meritless and Mr. Gish admittedly should not have made those serious unfounded allegations to this Court when he asks the Court for more time to find supporting evidence.  Contrary to Mr. Gish's assertions, the grilles depicted in drawings from 2012 are different than AAG's commercial embodiments of the '988 and '305 patents which were first sold on or about December 2, 2013, and the same was explained to Mr. Gish previously.

Therefore we believe that Defendants motion for extension of time should be denied.

Respectfully,

/Philip M. Weiss/
Philip M. Weiss

# EXHIBIT   A

**Law Offices of**

# Weiss & Weiss

410 Jericho Turnpike, Suite 105
Jericho, New York 11753
Tel: (516) 739-1500/Fax: (516) 739-2189

April 21, 2021

Brian Dayus
Dayus Register & Grille
5290 Pulleyblank St., RR#1
Windsor, Ontario, N9A 6J3

**Re:   Infringement of U.S. Patent Nos. 9,765,988 and 10,871,305
and U.S. Trademark Registration No. 5,132,735**

Dear Mr. Dayus:

We represent INV Holdings Inc. ("INV"), the owner of U.S. Patent Nos. 9,765,988 ("'988 Patent") and 10,871,305 ("'305 Patent"), both entitled "Dry Wall Extrusion Grilles", and U.S. Registration No. 5132735 ("'735 Registration") for the trademark "PLASTER J-BEAD" for use on or in connection with a "metal frame used for metal linear bar grilles" in International Class 6. It has recently come to our attention that Dayus Register & Grille ("Dayus") is infringing INV's '988 and '305 patents and its federally registered trademark "PLASTER J-BEAD". Dayus manufactures the Bar Linear J-Bead Flange Grille and sells it through distributors throughout the United States and also ships its goods directly. We write this letter in an attempt to amicably resolve Dayus' infringement of INV's patents and trademark.

**Dayus' Infringement of U.S. Patent No. 9,765,988**

The '988 patent was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") on September 19, 2017. A copy is attached hereto as **Exhibit A**. Advanced Arch Grilleworks ("AAG"), INV's exclusive licensee of the '988 patent, has advertised and sold its PLASTER J-Bead Grilles, commercial embodiments of the '988 patent, within the United States since December 2013 and has duly marked its products and advertising and sales materials associated therewith with Patent No. 9,765,988 since the issuance of that patent, thus making Dayus liable for all past damages for its infringement of the '988 patent.

1

It is our understanding that Dayus is in the business of using, making, offering to sell and/or selling architectural grilles within the United States, including its bar linear J-BEAD flange grille identified as DABLJ, or DABLRJ ("J-BEAD Grilles"). Based upon our review of Dayus' marketing and sales materials for its J-BEAD Grilles, we have determined it has directly infringed and continues to directly infringe claims 1-4, 7 and 9-23 of the '988 patent, under 35 U.S.C. § 271(a), by using, making, offering to sell and/or selling within the United States its J-BEAD Grilles, which literally contain each and every element of those claims.

Specifically, independent claim 1 of the '988 patent recites:

1. A dry wall extrusion grille comprising:
a frame,
a linear bar grille located in said frame comprised of vanes and cross members that direct a flow of air,
pre-perforated through holes,
indented slots, and
a flexible mounting flange located between a top and bottom edge of the frame and extending outwardly from said frame;
said indented slots defined as small recesses in said flexible mounting flange that receive plaster, joint compound or mud, said pre-perforated through holes located in the flexible mounting flange.

Dayus' J-BEAD Grilles literally contain each and every element of claim 1. The J-BEAD Grilles are dry wall extrusion grilles. **Exhibit D** attached hereto, a copy of Dayus' marketing material for its J-BEAD Grilles. Dayus' marketing materials show its J-BEAD Grilles have a frame; a linear bar grille located in the frame comprised of vanes and cross members to direct a flow of air; and a flexible mounting flange located between a top and bottom edge of the frame and extending outwardly from the frame. See **Exhibit D** showing J-BEAD Grilles contain each of the recited elements and stating "J-Bead recessed flange frame must be taped and plastered over" (**Exhibit D**). The flexible mounting flange of the J-BEAD Grilles has pre-perforated through holes and indented slots to receive plaster, joint compound or mud. See **Exhibit D** showing flange of J-BEAD Grilles has pre-perforated through holes and indented slots to receive plaster, joint compound or mud and stating and "Taper Drywall as required" (**Exhibit D**).

Dayus' J-BEAD Grilles also literally contain each and every element of dependent claims 2-4, 7 and 9-23. See **Exhibit D**.

Dayus' manufacture, use, offers to sell and/or sales of its J-BEAD Grilles within the United States has been without INV's consent or permission and it had constructive knowledge of the '988 patent by virtue of the patent markings and disclosures associated with AAG's PLASTER J-Bead Grilles. As a direct consequence of Dayus' infringement of the '988 patent, INV and AAG have suffered and will continue to suffer monetary damages for which INV is entitled to recover damages adequate to compensate for such infringement in an amount that would be determined at a trial together with interest and costs pursuant to 35 U.S.C. § 284, as well as treble damages for any willful infringement of the '988 patent and preliminary and/or

permanent injunctive relief, pursuant to 35 U.S.C. § 283, enjoining Dayus from committing
further acts of patent infringement within the United States.

### Dayus' Infringement of U.S. Patent No. 10,871,305

The '305 patent was duly and legally issued by the USPTO on December 22, 2020. A
copy is attached hereto as **Exhibit B**. AAG, INV's exclusive licensee of the '305 patent, has
duly marked its PLASTER J-Bead Grilles and advertising and sales materials associated
therewith with Patent No. 10,871,305 since the issuance of that patent, thus making Dayus liable
for all past damages for its infringement of the '305 patent.

Based upon our review of Dayus' marketing and sales materials for its J-BEAD Grilles,
we have determined it has directly infringed and continues to directly infringe claims 1-5, 8-11
and 14-16 of the '305 patent under 35 U.S.C. § 271(a) by using, making, offering to sell and/or
selling within the United States its J-BEAD Grilles, which literally contain each and every
element of those claims. Specifically, independent claim 1 of the '305 patent recites:

> 1. A dry wall extrusion grille comprising:
> a frame;
> a linear bar grille located in said frame comprised of vanes and cross members that direct
> a flow of air;
> indented slots;
> through holes;
> a flexible mounting flange located between a top and bottom edge of the frame extending
> outwardly from said frame;
> said indented slots defined as small recesses in said flexible mounting flange that receive
> plaster, joint compound or mud;
> wherein said extrusion grille is used with a fixed core, a core welded directly to said
> frame, or removable core.

Dayus' J-BEAD Grilles literally contain each and every element of claim 1. The J-BEAD
Grilles are dry wall extrusion grilles having a frame; a linear bar grille located in the frame
comprised of vanes and cross members that direct a flow of air; indented slots in the flexible
mounting flange to receive plaster, joint compound or mud; through holes; a flexible mounting
flange located between a top and bottom edge of the frame extending outwardly from the frame;
and the extrusion grille is used with a removable core. See **Exhibit D**.

Dayus' J-BEAD Grilles also literally contain each and every element of claims 2-5 and 8-
9 which depend from independent claim 1. See **Exhibit D**.

Independent claim 10 recites:

> A dry wall extrusion grille comprising:
> a frame;

3

a linear bar grille located in said frame comprised of vanes and cross members that
direct a flow of air;
through holes located in a flexible mounting flange;
indented slots;
said flexible mounting flange located between a top and bottom edge of the frame
extending outwardly from said frame;
said indented slots defined as small recesses in said flexible mounting flange that
receive plaster, joint compound or mud;
said frame being extended to at least 3/4".

Dayus' J-BEAD Grilles literally contain each and every element of claim 10. The grilles
are dry wall extrusion grilles having a frame; a linear bar grille located in the frame comprised of
vanes and cross members that direct a flow of air; through holes located in a flexible mounting
flange; indented slots to receive plaster, joint compound or mud; a flexible mounting flange
located between a top and bottom edge of the frame extending outwardly from the frame; and the
frame being extended to at least 3/4".  See **Exhibit D**.

Independent claim 11 recites:

A dry wall extrusion grille comprising:
 a frame;
 a linear bar grille located in said frame comprised of vanes and cross members that
direct a flow of air;
 through holes located in a flexible mounting flange;
 indented slots;
 said flexible mounting flange located between a top and bottom edge of the frame
extending outwardly from said frame;
 said indented slots defined as small recesses in said flexible mounting flange that
receive plaster, joint compound or mud;
 mounting strips attached to a bottom of said frame.

Dayus' J-BEAD Grilles literally contain each and every element of claim 11.  The grilles
are dry wall extrusion grilles having a frame; a linear bar grille located in the frame comprised of
vanes and cross members that direct a flow of air; through holes located in a flexible mounting
flange; indented slots to receive plaster, joint compound or mud; a flexible mounting flange
located between a top and bottom edge of the frame extending outwardly from the frame; and
mounting strips attached to a bottom of the frame.  See **Exhibit D**.

Dayus' J-BEAD Grilles also literally contain each and every element of claims 14-16
which depend from independent claim 11.  **Exhibit D**.

Dayus' manufacture, use, offer to sell and/or sales of its J-BEAD Grilles within the
United States has been without INV's consent or permission and it had constructive knowledge
of the '305 patent by virtue of the patent markings and disclosures associated with AAG's
PLASTER J-Bead Grilles. As a direct consequence of Dayus' infringement of the '305 patent,
INV and AAG have suffered and will continue to suffer monetary damages for which INV is

4

entitled to recover damages adequate to compensate for such infringement in an amount that would be determined at a trial together with interest and costs, pursuant to 35 U.S.C. § 284, as well as treble damages for any willful infringement of the '305 patent and preliminary and/or permanent injunctive relief pursuant to 35 U.S.C. § 283, enjoining Dayus from committing further acts of patent infringement within the United States.

## Dayus' Infringement of INV's PLASTER J-BEAD® Trademark

INV owns the '735 Registration for the mark PLASTER J-BEAD registered on the Principal Register on January 31, 2017 for use on or in connection with a "metal frame used for metal linear bar grilles." The '735 Registration is based on use of the mark in interstate commerce in the United States by AAG, INV's exclusive licensee, to advertise, offer to sell and sell its linear bar grilles since at least as early as December 2, 2013. AAG's use of the mark has been valid and continuous since that time and has not been abandoned. A copy of the '735 Registration is attached hereto as **Exhibit C.**

Since at least as early as December 2, 2013, AAG has continuously engaged in extensive nationwide use of the PLASTER J-BEAD mark to advertise, offer to sell and sell in interstate commerce in the United States its linear bar grilles to consumers and has invested a substantial amount of time and money to do so. By virtue thereof, that mark has achieved widespread and favorable public recognition and has become associated by the relevant purchasing public as a mark used exclusively by AAG and as signifying goods of the highest quality originating from AAG. INV and AAG have substantial goodwill in the PLASTER J-BEAD mark, which is an asset of tremendous value, and have the right to obtain the full benefit of the valuable goodwill inherent in use of the mark to advertise and sell AAG's grilles. INV is entitled to control all use of the mark and confusingly similar marks used on or in connection with advertising, offering to sell, distributing and selling linear bar grilles and related products.

Dayus is infringing INV's federally registered PLASTER J-BEAD mark and violating Section 32 of the Lanham Act, 15 U.S.C. § 1114 by using the nearly identical and confusingly similar J-BEAD mark to advertise, distribute, offer to sell and sell in interstate commerce in the United States its infringing J-BEAD Grilles, including use of the mark on its website in its advertising and other materials associated with its J-BEAD Grilles. Dayus' J-BEAD mark so resembles INV's PLASTER J-BEAD mark in appearance and commercial impression as to be likely to cause confusion, mistake or deception in the minds of consumers as the origin, identity or source of Dayus' goods and/or Dayus' goods being sponsored, authorized, approved or endorsed by, or affiliated or associated with, INV and/or AAG. Dayus uses the J-BEAD mark on or in connection with the same type of linear bar grilles sold by AAG under the PLASTER J-BEAD mark, in the same channels of trade as AAG's grilles, and to the same classes of purchasers as AAG.

The consumer confusion, mistake or deception from Dayus' use of the J-BEAD mark to advertise, offer to sell and sell its infringing grilles has resulted in, will continue to result in and/or is likely to result in loss of sales and revenue to INV and AAG by diverting sales from AAG to Dayus, resulting in ill-gotten gains to Dayus. Dayus' use of the J-BEAD mark to advertise and sell its grilles improperly capitalizes on and trades off the extensive, hard-earned

goodwill and reputation established for AAG's PLASTER J-BEAD Grilles and its infringing conduct has deprived INV and AAG of the ability to control consumer perception of the PLASTER J-BEAD mark, placing the valuable goodwill in the mark in the hands of Dayus. Deficiencies or faults in the quality of Dayus' J-BEAD Grilles is likely to reflect negatively upon, tarnish or seriously injure the goodwill and reputation established for AAG's products sold under the PLASTER J-BEAD mark.

INV's date of first use of the PLASTER J-BEAD mark in commerce is earlier than any date of first use Dayus may establish for the J-BEAD mark and Dayus has never had any authorization or license from INV to use J-BEAD to advertise and sell its infringing grilles. INV is entitled to recover monetary damages for Dayus' trademark infringement and preliminary and permanent injunctive relief prohibiting it from using the J-BEAD mark to advertise, distribute, offer to sell and sell its linear bar grilles.

As shown above, if INV were to file a lawsuit against Dayus, it would be entitled to seek: (1) preliminary and permanent injunctions; (2) actual monetary damages; (3) disgorging of any profits realized through use of the Mark; (4) reimbursement of costs and attorney fees; (5) treble damages based on willful infringement of INV's patents.

Please be advised that INV will undertake all appropriate steps to protect its Intellectual Property. However, INV and its Counsel are willing to discuss this matter and a potential resolution at this time.

We require a response to this letter within ten (10) days. Please feel free to contact us if you have any questions.

Very truly yours,

/PhilipMWeiss/

Philip M. Weiss

6

# EXHIBIT  B



**HOWARD IP**
PATENTS · TRADEMARKS · COPYRIGHTS

Niq Howard, Esq.
niq@howard-ip.com

1258 W Gregory Blvd
Kansas City, MO 64114

May 5, 2021

The Law Offices of Weiss & Weiss
℅ Philip M. Weiss
410 Jericho Turnpike, Suite 105
Jericho, New York 11753

RE: Response to Alleged Intellectual Property Infringement - Letter March 19, 2021

Dear Mr. Weiss,

This letter is to let you know that I represent Dayus Register & Grille Inc. (hereinafter referred to as "Dayus"). We are in receipt of your letter dated April 21, 2021.

We recently received and reviewed your letter regarding INV Holdings Inc. ("INV") and alleged patent rights for U.S. Patent Nos. 9,765,988 ("'988") and alleged patent rights for U.S. Patent 10,871,305 ("'305").

As an initial matter, we want you to know that we appreciate your letter. Additionally, please understand that as an organization, Dayus respects the intellectual property rights of others in the same way that Dayus expects its intellectual property rights to be respected. Dayus takes its patent and other intellectual property rights very seriously and closely manages and protects its rights. In view thereof, Dayus takes seriously any allegations of intellectual property infringement.

Alleged Patent Infringement

With respect to the matter raised in your letter that we received April 21, 2021, we do not infringe the alleged patent rights. As I'm sure you are aware, infringement requires each and every limitation of the claims be found. There are a number of claim elements missing in the accused product, were all the other requirements of infringement to be found, which we fully believe they are not.

Furthermore, as I am sure you are aware, patents are only granted for novel inventions. In accordance with 35 U.S.C §102(a)(1), an Applicant is not entitled to an invention if their invention is not novel, or said another way, if their invention was disclosed to the public more than a year before the effective filing date.

Here, at best, the effective filing date of the alleged INV patent rights, '988 and '305, is January 6, 2014. Dayus has evidence of sale of this product at least as early as 2007. The 2007 sales and sales in between 2007 and 2013 are all evidence that the invention was disclosed to the public prior to your effective filing date in 2014.

For at least the above reasons, Dayus fully and completely believes that they are not infringing your alleged patent rights. We respectfully respond to your letter and bring this to your attention.

Furthermore, we must demand that you cease and desist sending letters to our clients falsely alleging your rights and falsely claiming patent infringement, especially now that this has been brought to your attention. If any further correspondence is sent to us or our distributors/clients alleging infringement, then we will be forced to file any and all legal and prosecutorial proceedings against INV and INV's alleged patent rights both in federal court and with the United States Patent & Trademark Office to invalidate your patent rights.

Alleged Trademark Infringement

It appears you are attempting to claim that INV owns rights in the alleged mark "PLASTER J-BEAD" identified in U.S. Reg. No. 5,132,735 for goods in International Class 006 and that Dayus is allegedly infringing INV's mark. Such allegations are without merit.

An internet search of these terms individually, or in combination, confirms a generic meaning for the terms individually "PLASTER" and "J-BEAD" by many websites. The use of "PLASTER" describes a location or substance and the term "J-BEAD" describes a generic term which is well known in the industry. Many examples of this generic use can be found with a simple google search. A few of many of these examples are included in **Exhibit A.**

Given the apparent widespread generic use of these terms individually, or in combination, even if INV ever had any trademark rights in these terms, it clearly has been lost because the terms are incapable of functioning as a trademark when describing INV's goods. The terms have fallen into the public domain.

Similarly, Dayus has been using these terms in commerce for a number of years, and likely prior to your application date of the mark. Furthermore, likely before your alleged first date of use.

In summary, you must cease and desist any further correspondence regarding the above rights to Dayus, Dayus clients, or Dayus distributors, or Dayus will be forced to invalidate your rights and take further legal actions, to the full extent permissible by law.

Thank you again for your letter and if any further patent rights or trademark rights are believed to be infringing, we are grateful that you bring it to our attention so we may continue to monitor and ensure we are respectful of others intellectual property rights.

Sincerely and respectfully,

Niq Howard

/niqhoward/

**Exhibit A**

 **TRIM-TEX** DRYWALL SOLUTIONS 

‹ Products  ‹ Commercial Beads  ‹ J & L Beads



# J Bead 

Use J Bead to finish rough drywall ends and under all door and window encasements. Trim-Tex's first product that launched rigid vinyl into the drywall industry over 40 years ago, replacing galvanized metal, which would rust and dent increasing building maintenance costs.

**8 OPTIONS**  |  View & request samples  ⌄





# J Bead

*Click on thumbnail(s) to view larger image*

 



$19.98

★★★★★ 13

**Union Com...**
10-ft Corner...
Model #EGR45...

 New! Take a quick look at ratings and reviews

🚚 Delivery Available

⊗ Unavailable at Kansas City - Gladstone Lowe's
Check Other Stores

| Add to Cart |
| --- |

$1.98

★★★★ 3

**Dietrich Metal Framing**
Vinyl J-Bead 1/2 In. x 10 Ft.
Model #00751361090052

🚚 Delivery Available

⊗ Unavailable at Kansas City - Gladstone Lowe's
Check Other Stores

| Add to Cart |
| --- |

$11.62

3-in x 10-ft Metal Corner Bead
Model #56214

🚚 Delivery Unavailable

⊗ Unavailable at Kansas City - Gladstone Lowe
Check Other Stores

| Notify Me |
| --- |



$1.98




$1.98



Online

Ask me anything!
I am here to help.

LOWE'S

$2.28

# EXHIBIT  C



Weiss and Weiss <hello@weissandweisspc.com>

---

**INV holdings and Dayus**
1 message

---

**Weiss and Weiss** <hello@weissandweisspc.com>                                        Wed, May 19, 2021 at 9:00 AM
To: niq@howard-ip.com

Niq:

I represent INV Holdings.  I tried to contact you yesterday about your letter that I received last week.  Please provide me a time when we can discuss.

Thanks

Philip Weiss



**Weiss and Weiss**

p:  516-739-1500
a:  410 Jericho Tpke, Suite 105
    Jericho, NY 11753
e:  hello@weissandweisspc.com

**IMPORTANT NOTICE:** *Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Never wire money without double-checking that the wiring instructions are correct. **Call Weiss and Weiss at (516) 739-1500 to confirm with us before wiring any funds.***

 **Weiss & Weiss**

Weiss and Weiss <hello@weissandweisspc.com>

---

**INV Holdings, Dayus Register & Grille**
1 message

---

**Weiss and Weiss** <hello@weissandweisspc.com>                    Fri, May 21, 2021 at 10:16 AM
To: niq@howard-ip.com

Mr. Howard:

I have tried to contact you several times this week.  I represent INV Holdings and Advanced Arch Grilleworks.  We have filed a lawsuit against your client Dayus, but have not served your client yet.  I have been calling you to try and discuss the matter.  If you and your client do not want to discuss the matter, will you accept service of the Complaint on behalf of your client.

Respectfully,

Philip Weiss

 **Weiss and Weiss**

p:  516-739-1500
a:  410 Jericho Tpke, Suite 105
    Jericho, NY 11753
e:  hello@weissandweisspc.com

<u>**IMPORTANT NOTICE**</u>: *Never trust wiring instructions sent via email. Cyber criminals are hacking email accounts and sending emails with fake wiring instructions. These emails are convincing and sophisticated. Never wire money without double-checking that the wiring instructions are correct.* ***Call Weiss and Weiss at (516) 739-1500 to confirm with us before wiring any funds.***

---

# EXHIBIT  D


**Weiss & Weiss**

## INV Holdings v. Dayus (SDNY Case No. 2:21-cv-2786)
1 message

**Andrew Gish** <andrew@gishpllc.com>                                Tue, Jun 1, 2021 at 10:26 AM
To: hello@weissandweisspc.com
Cc: Marti Johnson <marti@gishpllc.com>

Philip,

Our firm has been retained to represent Dayus in this matter. Are you available for a brief telephone conversation this week to discuss the matter?

Best,
Andrew

--
Andrew Gish | Partner | Gish PLLC
(212) 518-7380 | andrew@gishpllc.com
41 Madison Avenue, Floor 31
New York, NY 10010

# EXHIBIT  E

# GISH PLLC

41 MADISON AVENUE, FLOOR 31
NEW YORK, NY 10010
(212) 518-7380 | ANDREW@GISHPLLC.COM

JUNE 7, 2021

Philip M. Weiss
Law Offices of Weiss & Weiss
410 Jericho Turnpike, Suite 105
hello@weissandweisspc.com
(516) 739-1500

Re:   *INV Holdings Inc. and Advanced Arch Grilleworks, Inc. v. Dayus Register & Grille Inc.* (E.D.N.Y. Case No. 2:21-cv-02786)

Philip:

We have analyzed the claims raised by INV Holdings Inc. ("INV") and Advanced Arch Grilleworks, Inc. ("AAG") (collectively "Plaintiffs") against Dayus Register & Grille Inc. ("Dayus") in the above-captioned matter, and they are plainly frivolous.  More concerning, it appears that Plaintiffs filed suit without conducting even rudimentary investigation into the merits of their claims.

### Plaintiffs' Patent Infringement Claims Are Meritless

Plaintiffs' Complaint raises claims for infringement of U.S. Patent Nos. 9,765,988 ("the '988 Patent") and 10,871,305 ("the '305 Patent") (together the "Asserted Patents").  Plaintiffs' website advertises—and concedes—that at least its AAG100 and AAG330 J-Bead products practice the Asserted Patents.



(https://aagrilles.com/product/aag100-plaster-j-bead-frame-stock/; accessed **June 6, 2021**; copy at Ex. 1)

1



(https://aagrilles.com/j-bead/plaster-j-bead-frame-for-bar-grilles/;
accessed **June 6, 2021**; copy at Ex. 2)

However, publicly available records on the Internet Archive demonstrate that both of these products were offered for sale by Plaintiffs at least as early as October 23, 2012, more than one year before the January 6, 2014 priority date of the Asserted Patents.

> • **Linear Bar Grilles**
>   ○ **AAG 100**
>   ○ **AAG 110**
>   ○ **AAG 200**
>   ○ **AAG 220**
>   ○ **AAG 300**
>   ○ **AAG 330**
>   ○ **AAG 400**
>   ○ **Installation Details**
>   ○ **Specialty Bar Grilles**
>   ○ **Plaster J-Bead**

(Internet Archive backup of http://www.aagrilles.com/custom-fabrication/jbead;
archived **October 23, 2012**; copy at Ex. 3)

The same web page from 2012 went on to explain that a "Plaster – J Bead" version was "available on all linear bar grille models with an A or Band style frame," including the AAG 100 and AAG 330. Plaintiffs' website further advertised that these "Plaster – J Bead" products were "fastened to the wall via the outer flange by either screwing or nailing through the pre-drilled holes. After fastening,

the flange is covered with a skim coat of plaster providing your customer with a clean, flush appearance."

## Plaster – J Bead



### Framed Linear Bar Grille

The Advanced Arch Grilles Plaster Frame linear bar grille provides a flush, borderless installation for plaster and drywall applications on walls and/or ceilings. Also known in the industry as a "mud grille", it provides a seamless wall or ceiling installation.

The J Bead design is quickly fastened to the wall via the outer flange by either screwing or nailing through the pre-drilled holes. After fastening, the flange is covered with a skim coat of plaster providing your customer with a clean, flush appearance.

This custom fabricated linear bar grille is available in aluminum with a full range of finishes: satin # 4, satin – clear anodized, mirror polish # 8, prime painted, or powder coated.

The core can be fixed (welded to the frame), or removable for access to damper controls.

This design is available on all linear bar grille models with an A or B and style frame.

(Internet Archive backup of http://www.aagrilles.com/custom-fabrication/jbead; archived **October 23, 2012**; copy at Ex. 3)

Additionally, Plaintiffs' website provided instructions for installing the AAG100 J-Bead. Not only do these instructions depict the claimed elements of the Asserted Patent, they plainly served as the template for at least Fig. 4 of the Asserted Patents.

3



(Internet Archive backup of http://www.aagrilles.com/installationdetails/linearbargrilles;
archived **May 25, 2012**; copy at Ex. 4)



('988 Patent, Fig. 4; '305 Patent, Fig. 4)

Because Plaintiffs offered for sale products that they admit embody the Asserted Patents more than one year before the earliest possible priority date, the Asserted Patents are both invalid under at least 35 U.S.C. § 102(a).  Moreover, Plaintiffs failed to disclose prior sales of these products to the United States Patent and Trademark Office ("USPTO") during prosecution of the patents.  Such willful non-disclosure is an egregious violation of the duty of candor the Plaintiffs owed—and continue to owe—the USPTO.  Accordingly, all claims of the Asserted Patents are also unenforceable for inequitable conduct and under the equitable doctrine of unclean hands.

For at least these reasons, Plaintiffs' patent infringement claims are meritless.

## Plaintiffs' Trademark and Unfair Competition Claims Are Meritless

Plaintiffs additionally raise claims for trademark infringement of the "Plaster J-Bead" mark, and an unfair competition claim on the same grounds.  Even cursory pre-suit investigation would have revealed that this mark is invalid on multiple bases.

"J-Bead" is a *descriptive* term, not a *distinctive* term.  It denotes not a particular *source* of goods, but a type of *structure* used to provide a flush contact for drywall mounting. For instance, the Trim-Tex Drywall Solutions website depicts a "J Bead" structure like that depicted in the Asserted Patents and explains that "J Bead . . . is designed for butting drywall to other substrates such as masonry, glass, doors & windows."



(https://www.trim-tex.com/products/overview/commercial-beads/j-l-beads/mud-j-bead/; accessed **June 6, 2021**; copy at Ex. 5)

Similarly, the Clark Dietrich website offers "J-Bead" products for sale.  It explains that "J-Bead is designed to cover raw edges of drywall under all window and door casings."



(https://www.clarkdietrich.com/products/j-bead; accessed **June 6, 2021**; copy at Ex. 6)

And, among numerous other examples readily available with a simple Google search, Plastic Components also offers for sale "Drywall 'J' Bead" for flush mounting objects within drywall.

## "J" Bead

| Product Number | Dimensions/Descriptions | Board Thickness | Pieces Per Box |
|---|---|---|---|
| 200X-25 |  | 1/4"(6 mm) | 75 |
| 200X-38 | Drywall "J" Bead has tapered face return. Back flange 1" (25 mm), front return 1/2" (13 mm). | 3/8"(10 mm) | 50 |
| 200X-50 |  | 1/2"(13 mm) | 50 |
| 200X-58 |  | 5/8" (16 mm) | 50 |
| 200X-75 |  | 3/4" (19 mm) | 50 |
| 8' & 10' (2.5 & 3 m) Lengths |  |  |  |

(https://plasticcomponents.com/wp-content/uploads/2015/07/pc-arch-binder-75.pdf; accessed **June 6, 2021**; copy at Ex. 7)

Moreover, widespread descriptive use of the term "J-Bead" is not new. It predates both Plaintiffs' registration date (January 31, 2017) and Plaintiffs' earliest claimed commercial use of the term (December 2, 2013). As one example, publicly available records on the Internet Archive demonstrate that Trim-Tex Drywall Products used the term "J Bead" to describe its flush-mount drywall products at least as early as May 13, 2011.



### J Bead

Use J Bead to finish rough drywall ends and under all door and window. Trim-Tex's first product that launched rigid vinyl into the drywall industry 40 years ago.

More Info

### Shadow Line J Bead

Use Shadow Line J Bead to form a distinctive edge along the drywall for a modern look.

More Info

### Mud On J Bead

Mud on J Bead is

⅜"

1¼"

(Internet Archive backup of http://www.trim-tex.com/product_catalog.php?cat_display=viewcategory&catid=15; archived **May 13, 2011**; copy at Ex. 8)

Similarly, the Internet Archive shows that Clark Dietrich used the term "J-Bead" to describe products "used to finish drywall edges" at least as early as August 24, 2012.



**VINYL MUDABLE J-BEAD (VLMJ)**
**USED TO FINISH DRYWALL EDGES WHEN DISSIMILAR MATERIALS AND DOOR AND WINDOW ENCASEMENTS MEET GYPSUM**

Vinyl Mudable J-Bead is used to cover and protect exposed ends of gypsum panels that abut to other substrates such as masonry, glass and metal frames. Raised shoulder and extensive perforations along flange ensure excellent finishing compound adhesion and flush finish. Moisture- and thermal-resistant properties of rigid vinyl trims make for ideal use around bathtubs, showers, windows and skylights. Rust proof and dent resistant. Easy to cut and install. Available in 1/2" and 5/8" depths.

(Internet Archive backup of http://www.clarkdietrich.com/products/vinyl-trims-and-finishing-products/vinyl-mudable-j-bead-vlmj; archived **August 24, 2012**; copy at Ex. 9)

And, Canadian Patent No. 2,471,528—filed on June 15, 2004—discloses a system for "flush mounting aperture covers with finished drywall surfaces." (Ex. 10 at Abstract.)  The patent depicts the below structure, which the patents expressly refer to as "J bead." (Ex. 10 at 10.)  But even in 2004—eight years before Plaintiffs' alleged first use of the term—the patent explained that "J bead" was not a new innovation or a distinctive term, but merely "prior art." (Ex. 10 at 13.)



(Canadian Patent No. 2,471,528, Figs. 3, 3A; filed **June 15, 2004**; copy at Ex. 10)

Thus, contrary to Plaintiffs naked assertion that the term "J-Bead" is a distinctive term denoting goods marketed by Plaintiffs, it is a prototypical descriptive term.  Moreover, the term is widely used within the industry, and has been since long before Plaintiffs attempted to appropriate it.  Accordingly, this mark is invalid and unenforceable.

For at least these reasons, Plaintiffs' trademark infringement claims are meritless.  Because Plaintiffs' unfair competition claim is duplicative of their trademark infringement claims, it is also meritless.

7

**Plaintiffs' Patent and Trademark Assertions Are Abusive**

Plaintiffs' filing and continued pursuit of such frivolous claims is abusive. At a minimum, Plaintiffs' conduct—particularly the assertion of patents despite knowledge that the patents are invalidated by prior sales—renders this case "exceptional" under 35 U.S.C. § 285. Equally troubling, even a cursory pre-suit investigation would have revealed these issues. Plaintiffs' apparent failure to conduct any investigation—let alone adequate investigation—prior to filing suit is a textbook violation of Rule 11 of the Federal Rules of Civil Procure. Moreover, Plaintiffs' attempts to assert intellectual property against Dayus' customers and/or distributors—including but not limited to the Madelyn Carter Company—constitutes at least intentional interference with Dayus' business relations, and a violation of unfair competition law.

Accordingly, Dayus demands that, **by Friday June 11, 2021**, Plaintiffs:

- Dismiss the above-captioned action *with prejudice*.

- Cease and desist attempts to enforce the trademark and the Asserted Patents against any customers and/or distributors of Dayus.

- Retract any restrictions imposed upon customers of Dayus in relation to the trademark and/or the Asserted Patents (e.g., in settlement of legal claims).

If Plaintiffs fail to dismiss this action, Dayus will move for both attorney fees under 35 U.S.C. § 285 and sanctions under Fed. R. Civ. P. 11. Further, Dayus will institute proceedings for *Inter Partes Review* before the Patent Trial and Appeal to invalidate the Asserted Patents, and cancellation proceedings before the Trademark Trial and Appeal Board to invalidate the trademark. Finally, Plaintiff will file suit and/or counterclaims to hold Plaintiffs accountable for their assertion of plainly invalid intellectual property, including at least claims for interference with business relations and unfair competition.

Sincerely,

Andrew Gish
Gish PLLC