## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

INV HOLDINGS INC. and ADVANCED
ARCH GRILLEWORKS, INC.,

        Plaintiffs,

    vs.

DAYUS REGISTER & GRILLE, INC.

        Defendant

Civ. A. No. 2:21-cv-05107-GRB-ST

## DEFENDANT'S FIRST AMENDED ANSWER,
## AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

### ANSWER

Defendant Dayus Register & Grille, Inc. ("Dayus"), by and through its undersigned

counsel, hereby answers and responds to each of the allegations of Plaintiffs INV Holdings

Inc. ("INV") and Advanced Arch Grilleworks, Inc. ("AAG") in their Complaint (Dkt. No. 1),

as follows:

### Nature of Action

1.      Dayus admits that the Complaint purports to plead an action for patent

infringement and trademark infringement.  Except as expressly admitted, Dayus denies the

allegations of paragraph 1 of the Complaint.

2.      Dayus denies the allegations of paragraph 2 of the Complaint.

3.      Dayus denies the allegations of paragraph 3 of the Complaint.

4.      Dayus denies the allegations of paragraph 4 of the Complaint.

1

**The Parties**

5.      Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 5 of the Complaint, and on that basis denies them.

6.      Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 6 of the Complaint, and on that basis denies them.

7.      Dayus admits that it operates a facility at 5290 Pulleyblank St. R.R. #1, Windsor, Ontario, Canada N9A 6J3.  Dayus admits that it manufactures and sells a grille having the model number DABLJ.  Except as expressly admitted, Dayus denies the allegations of paragraph 7 of the Complaint.

**Jurisdiction and Venue**

8.      Dayus states that the allegations of paragraph 8 of the Complaint are legal conclusions to which no response is required.  To the extent that any response to such allegations may be deemed required, Dayus denies the allegations of paragraph 8 of the Complaint.

9.       Dayus states that the allegations of paragraph 9 of the Complaint are legal conclusions to which no response is required.  To the extent that any response to such allegations may be deemed required, Dayus denies the allegations of paragraph 9 of the Complaint.

10.      Dayus states that the allegations of paragraph 10 of the Complaint are legal conclusions to which no response is required.  To the extent that any response to such allegations may be deemed required, Dayus denies the allegations of paragraph 10 of the Complaint.

2

## Factual Background

### United States Patent No. 9,765,988

11.     Dayus admits that U.S. Patent No. 9,765,988 ("the '988 Patent") lists on its face purported items of information including a title, issue date, named inventors, assignee, application number, application date, publication number, and publication date.  Except as otherwise admitted, Dayus denies the allegations of paragraph 11 of the Complaint.  As one example, Dayus specifically denies the allegation that the '988 Patent was "duly and legally issued. "

12.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 12 of the Complaint, and on that basis denies them.

13.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 13 of the Complaint, and on that basis denies them.

14.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 14 of the Complaint, and on that basis denies them.

15.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 15 of the Complaint, and on that basis denies them.

### United States Patent No. 10,871,305

16.     Dayus admits that U.S. Patent No. 10,871,305 ("the '305 Patent") lists on its face purported items of information including a title, issue date, named inventors, assignee, application number, application date, publication number, and publication date.  Except as otherwise admitted, Dayus denies the allegations of paragraph 16 of the Complaint.  As one example, Dayus specifically denies the allegation that the '305 Patent was "duly and legally

issued."

17.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 17 of the Complaint, and on that basis denies them.

18.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 18 of the Complaint, and on that basis denies them.

19.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 19 of the Complaint, and on that basis denies them.

**The PLASTER J-BEAD Trademark**

20.     Dayus denies the allegations of paragraph 20 of the Complaint.

21.     Dayus denies the allegations of paragraph 21 of the Complaint.

22.     Dayus denies the allegations of paragraph 22 of the Complaint.

23.     Dayus denies the allegations of paragraph 23 of the Complaint.

24.     Dayus denies the allegations of paragraph 24 of the Complaint.

25.     Dayus denies the allegations of paragraph 25 of the Complaint.

26.     Dayus denies the allegations of paragraph 26 of the Complaint.

**Alleged Infringement of the '988 and '305
Patents and PLASTER J-BEAD Trademark**

27.     Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 27 of the Complaint, and on that basis denies them.

28.     Dayus denies the allegations of paragraph 28 of the Complaint.

29.     Dayus admits that it operates the website www.dayus.com.  Except as expressly admitted, Dayus denies the allegations of paragraph 29 of the Complaint.

30.     Dayus denies the allegations of paragraph 30 of the Complaint.

31.     Dayus denies the allegations of paragraph 31 of the Complaint.

32.     Dayus denies the allegations of paragraph 32 of the Complaint.

33.     Dayus denies the allegations of paragraph 33 of the Complaint.

34.     Dayus denies the allegations of paragraph 34 of the Complaint.

35.     Dayus denies the allegations of paragraph 35 of the Complaint.

36.     Dayus denies the allegations of paragraph 36 of the Complaint.

37.     Dayus denies the allegations of paragraph 37 of the Complaint.

38.     Dayus denies the allegations of paragraph 38 of the Complaint.

**Count I**
**Alleged Infringement of U.S. Patent No. 9,765,988**

39.     Dayus incorporates by reference its responses to the allegations of paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40.     Dayus denies the allegations of paragraph 40 of the Complaint.

41.     Dayus admits that the U.S. Patent No. 9,765,988 purports to recite claim language on its face.  Except as expressly admitted, Dayus denies the allegations of paragraph 41 of the Complaint.

42.     Dayus denies the allegations of paragraph 42 of the Complaint.

43.     Dayus denies the allegations of paragraph 43 of the Complaint.

44.     Dayus denies the allegations of paragraph 44 of the Complaint.

45.     Dayus denies the allegations of paragraph 45 of the Complaint.

46.     Dayus denies the allegations of paragraph 46 of the Complaint.

47.     Dayus denies the allegations of paragraph 47 of the Complaint.

48.     Dayus denies the allegations of paragraph 48 of the Complaint.

49.     Dayus denies the allegations of paragraph 49 of the Complaint.

50.     Dayus denies the allegations of paragraph 50 of the Complaint.

51.     Dayus denies the allegations of paragraph 51 of the Complaint.

52.     Dayus denies the allegations of paragraph 52 of the Complaint.

53.     Dayus denies the allegations of paragraph 53 of the Complaint.

54.     Dayus denies the allegations of paragraph 54 of the Complaint.

55.     Dayus denies the allegations of paragraph 55 of the Complaint.

56.     Dayus denies the allegations of paragraph 56 of the Complaint.

57.     Dayus denies the allegations of paragraph 57 of the Complaint.

58.     Dayus denies the allegations of paragraph 58 of the Complaint.

59.     Dayus denies the allegations of paragraph 59 of the Complaint.

60.     Dayus denies the allegations of paragraph 60 of the Complaint.

61.     Dayus denies the allegations of paragraph 61 of the Complaint.

62.     Dayus denies the allegations of paragraph 62 of the Complaint.

63.     Dayus denies the allegations of paragraph 63 of the Complaint.

64.     Dayus denies the allegations of paragraph 64 of the Complaint.

65.     Dayus denies the allegations of paragraph 65 of the Complaint.

**Count II**
**Alleged Infringement of U.S. Patent No. 10,871,305**

66.     Dayus incorporates by reference its responses to the allegations of paragraphs

1 through 65 of the Complaint as though fully set forth herein.

67.     Dayus denies the allegations of paragraph 67 of the Complaint.

68.     Dayus admits that the U.S. Patent No. 10,871,305 purports to recite claim

language on its face.  Except as expressly admitted, Dayus denies the allegations of paragraph 68 of the Complaint.

69.     Dayus denies the allegations of paragraph 69 of the Complaint.

70.     Dayus denies the allegations of paragraph 70 of the Complaint.

71.     Dayus denies the allegations of paragraph 71 of the Complaint.

72.     Dayus denies the allegations of paragraph 72 of the Complaint.

73.     Dayus denies the allegations of paragraph 73 of the Complaint.

74.     Dayus denies the allegations of paragraph 74 of the Complaint.

75.     Dayus admits that the U.S. Patent No. 10,871,305 purports to recite claim language on its face.  Except as expressly admitted, Dayus denies the allegations of paragraph 75 of the Complaint.

76.     Dayus denies the allegations of paragraph 76 of the Complaint.

77.     Dayus admits that the U.S. Patent No. 10,871,305 purports to recite claim language on its face.  Except as expressly admitted, Dayus denies the allegations of paragraph 77 of the Complaint.

78.     Dayus denies the allegations of paragraph 78 of the Complaint.

79.     Dayus denies the allegations of paragraph 79 of the Complaint.

80.     Dayus denies the allegations of paragraph 80 of the Complaint.

81.     Dayus denies the allegations of paragraph 81 of the Complaint.

82.     Dayus denies the allegations of paragraph 82 of the Complaint.

83.     Dayus denies the allegations of paragraph 83 of the Complaint.

84.     Dayus denies the allegations of paragraph 84 of the Complaint.

85.     Dayus denies the allegations of paragraph 85 of the Complaint.

**Count III**
**Alleged Trademark Infringement of PLASTER J-BEAD**
**Trademark in Violation of 15 U.S.C. § 1114(1)**

86.     Dayus incorporates by reference its responses to the allegations of paragraphs

1 through 85 of the Complaint as though fully set forth herein.

87.     Dayus denies the allegations of paragraph 87 of the Complaint.

88.     Dayus denies the allegations of paragraph 88 of the Complaint.

89.     Dayus denies the allegations of paragraph 89 of the Complaint.

90.     Dayus denies the allegations of paragraph 90 of the Complaint.

91.     Dayus denies the allegations of paragraph 91 of the Complaint.

92.     Dayus denies the allegations of paragraph 92 of the Complaint.

93.     Dayus denies the allegations of paragraph 93 of the Complaint.

94.     Dayus denies the allegations of paragraph 94 of the Complaint.

95.     Dayus denies the allegations of paragraph 95 of the Complaint.

96.     Dayus denies the allegations of paragraph 96 of the Complaint.

97.     Dayus denies the allegations of paragraph 97 of the Complaint.

98.     Dayus denies the allegations of paragraph 98 of the Complaint.

**Count IV**
**Alleged Trademark Infringement of PLASTER J-BEAD**
**Trademark in Violation of 15 U.S.C. § 1125(a)**

99.     Dayus incorporates by reference its responses to the allegations of paragraphs

1 through 98 of the Complaint as though fully set forth herein.

100.    Dayus denies the allegations of paragraph 100 of the Complaint.

101.    Dayus denies the allegations of paragraph 101 of the Complaint.

102.    Dayus denies the allegations of paragraph 102 of the Complaint.

103.    Dayus denies the allegations of paragraph 103 of the Complaint.

104.    Dayus denies the allegations of paragraph 104 of the Complaint.

105.    Dayus denies the allegations of paragraph 105 of the Complaint.

106.    Dayus denies the allegations of paragraph 106 of the Complaint.

107.    Dayus denies the allegations of paragraph 107 of the Complaint.

108.    Dayus denies the allegations of paragraph 108 of the Complaint.

109.    Dayus denies the allegations of paragraph 109 of the Complaint.

110.    Dayus denies the allegations of paragraph 110 of the Complaint.

**Count V**
**Alleged Unfair Competition and Trademark**
**Infringement Under New York Common Law**

111.    Dayus incorporates by reference its responses to the allegations of paragraphs 1 through 110 of the Complaint as though fully set forth herein.

112.    Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 112 of the Complaint, and on that basis denies them.

113.    Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 113 of the Complaint, and on that basis denies them.

114.    Dayus lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 114 of the Complaint, and on that basis denies them.

115.    Dayus denies the allegations of paragraph 115 of the Complaint.

116.    Dayus denies the allegations of paragraph 116 of the Complaint.

117.   Dayus denies the allegations of paragraph 117 of the Complaint.

118.   Dayus denies the allegations of paragraph 118 of the Complaint.

119.   Dayus denies the allegations of paragraph 119 of the Complaint.

120.   Dayus denies the allegations of paragraph 120 of the Complaint.

121.   Dayus denies the allegations of paragraph 121 of the Complaint.

122.   Dayus denies the allegations of paragraph 122 of the Complaint.

123.   Dayus denies the allegations of paragraph 123 of the Complaint.

124.   Dayus denies the allegations of paragraph 124 of the Complaint.

125.   Dayus denies the allegations of paragraph 125 of the Complaint.

126.   Dayus denies the allegations of paragraph 126 of the Complaint.

### Plaintiffs' Jury Demand

127.   No response required.

### Plaintiffs' Prayer for Relief

Dayus denies that Plaintiffs are entitled to any relief whatsoever from Dayus or this Court, either as requested in the Complaint or otherwise.  To the extent Plaintiff's prayer for relief includes any factual or legal allegations, Dayus denies such allegations.

### AFFIRMATIVE DEFENSES

128.   Subject to its above responses, Dayus hereby asserts the following affirmative defenses, without assuming any burden of proof or persuasion on any issue, whether in whole or in part, where such burden(s) would otherwise be borne by Plaintiffs.  Dayus expressly reserves the right to assert additional defenses that become known during the course of the litigation.

**First Defense**
**(Failure to State a Claim)**

129.    With respect to each purported claim for relief alleged in the Complaint,

Plaintiffs fail to allege facts sufficient to state a claim against Dayus upon which relief may

be granted.

**Second Defense**
**(Lack of Standing)**

130.    Plaintiffs lack standing to bring their claims.  In particular, Plaintiff Advanced

Arch Grilleworks, Inc. lacks standing to bring any claims for infringement of the '988 or

'305 Patents, because the exclusive right to sue for infringement of those patents is possessed

by Plaintiff INV Holdings Inc.

**Third Defense**
**(No Patent Infringement)**

131.    Dayus has not infringed any claim of the '988 Patent or the '305 Patent

(collectively the "asserted patents"), literally or under the doctrine of equivalents.

**Fourth Defense**
**(Patent Invalidity/Unenforceability)**

132.    Each of the claims of the asserted patents is invalid and/or unenforceable for

failing to comply with one or more of the requirements for patentability under the Patent

Laws of the United States as set forth in 35 U.S.C. § 101 *et seq*., including but not limited to

35 U.S.C. § 101, 102, 103, 112, 116, and 282.

**Fifth Defense**
**(Prosecution History Estoppel)**

133.    Plaintiffs are estopped from construing any valid claim of the asserted patents

to cover or include, either literally or by application of the doctrine of equivalents, any of

Dayus' products or processes because of statements made to the U.S. Patent and Trademark Office during the prosecution of the applications which led to the issuance of the asserted patents.

**Sixth Defense**
**(Inequitable Conduct)**

134.    The '988 Patent and the '305 Patent are unenforceable pursuant to the doctrine of inequitable conduct.  The named inventors, Daniel Roeper and Lynne Bruhnke, and the prosecuting attorney, Philip Weiss, all of whom owed a duty of candor to the United States Patent and Trademark Office ("USPTO"), committed acts of inequitable conduct during prosecution of the '988 and '305 Patents.

135.    In particular, on information and belief, Mr. Roeper, Ms. Bruhnke, and Mr. Weiss all knew that Plaintiff AAG was selling products embodying claims of both patents at least as early as October 23, 2012, more than one year before the earliest possible January 6, 2014 priority date of the asserted patents.  Under at least 35 U.S.C. §§ 102 and 103, these sales would have precluded issuance of the asserted patents.  But, despite disclosing other tenuously related (i.e., non-threatening) prior art to the USPTO, Mr. Roeper, Ms. Bruhnke, and Mr. Weiss withheld any mention of Plaintiff AAG's prior sales (including prior art documents reflecting the structure of the products sold) during prosecution of the applications that led to the asserted patents.

136.    The only motivation that can explain withholding this information is that Mr. Roeper, Ms. Bruhnke, and Mr. Weiss knew that the USPTO would not grant the patent applications if the prior sales were disclosed.  Thus, the single most reasonable inference that can be drawn from this conduct is that Mr. Roeper, Ms. Bruhnke, and Mr. Weiss specifically

intended to deceive the USPTO.  The "who, what, when, where, how, and why" of these acts of inequitable conduct are described below.

**Who: The Named Inventors and the Prosecuting Attorney**

137.    Daniel Roeper is a named inventor of the '988 and '305 Patents.  According to New York Department of State records, Mr. Roeper is and was at all relevant times the principal of Plaintiffs AAG and INV, as well as Oemetrix, L.L.C. ("Oemetrix"), the original assignee of the asserted patents.  (*See also, e.g.*, *LinkedIn: Dan Roeper*, https://www.linkedin.com/in/dan-roeper-5b71561b/ (visited December 31, 2021).)  On information and belief, in his capacity as a principal of AAG and a purported inventor of the '988 and '305 Patents, Mr. Roeper had full knowledge of the sales of products embodying the asserted patents described herein.

138.    Lynne Bruhnke is a named inventor of the '988 and '305 Patents.  On information and belief, Ms. Bruhnke is and was at all relevant times a high-ranking employee of Oemetrix, AAG, and INV.  (*E.g.*, *Careers at Oemetrix*, http://oemetrix.com/careers-at-oemetrix/ (visited December 31, 2021) (listing Ms. Bruhnke as Vice-President of Oemetrix); OpenGovUS Advanced Arch Grilleworks, Inc., https://opengovus.com/sam-entity/015499914 (visited December 31, 2021) (listing Ms. Bruhnkhe as a point of contact for AAG).)  On information and belief, in her capacity as a high-ranking employee of AAG and a purported inventor of the '988 and '305 Patents, Ms. Bruhnke had full knowledge of the sales of products embodying the asserted patents described herein.

139.    Mr. Roeper and Ms. Bruhnke, through their prosecuting attorney, Mr. Weiss,

filed the '988 Application on January 6, 2014.[1]  Mr. Roeper and Ms. Bruhnke submitted with

that application a January 6, 2014 declaration granting power of attorney to Mr. Weiss and

"acknowledg[ing] the duty to disclose information which is material to patentability."  The

declaration further acknowledged that "willful false statements may jeopardize the validity of

the application or any patent issued thereon."

140.    Mr. Roeper and Ms. Bruhnke, through their prosecuting attorney, Mr. Weiss,

filed the '305 Application as a continuation-in-part of the '988 Application on March 31,

2017.[2]  Mr. Roeper and Ms. Bruhnke's duty of candor to the USPTO, as acknowledged in

their January 6, 2014 declaration, continued to apply to prosecution of the '305 Application.

141.    Philip Weiss is a partner at Weiss & Weiss PC, and has been a registered

patent attorney since 1991 (USPTO Reg. No. 34,751).  On information and belief, as a

registered patent attorney, Mr. Weiss is familiar with a patent applicant's duty of candor to

the USPTO.  Mr. Weiss was the attorney responsible for prosecuting the '988 and '305

Applications, and his signature appears on all of the applicants' submissions.  Mr. Weiss also

represents Plaintiffs in this action.

142.    On information and belief, as the patent attorney prosecuting the '988 and

'305 Applications, Mr. Weiss was obligated to and did inform Mr. Roeper and Ms. Bruhnke

of their duty of candor to the USPTO.   On information and belief, as the patent attorney

prosecuting the '988 and '305 Applications, Mr. Weiss was obligated to and did discuss with

Mr. Roeper and Ms. Bruhnke the timing of prior sales.  Accordingly, on information and

---

[1] The '988 Patent issued from U.S. Pat. Application No. 13/999,038.  For simplicity, Dayus refers to this application as "the '988 Application" herein.

[2] The '305 Patent issued from U.S. Pat. Application No. 15/476,855.  For simplicity, Dayus refers to this application as "the '305 Application" herein.

belief, Mr. Weiss prosecuted the '988 and '305 Patents with full knowledge of the

invalidating prior sales described herein.

> **What and Where: At Least Claim 1 of the '988 Patent and Claim 1 of the '305 Patent Were Practiced in AAG's AAG100 and AAG330 Grilles Sold More Than One Year Before the Patents**

143.    Plaintiffs advertise that at least their AAG100 and AAG330 grilles practice

both the '988 Patent and the '305 Patent.  (*E.g.*, *Plaster J-Bead Frame*® *US Patent Nos.*

*9,765,988 10,871,305 – AAG2020*, Advanced Architectural Grilleworks,

https://aagrilles.com/j-bead/plaster-j-bead-frame-for-bar-grilles/ (visited December 31,

2021).)



144.    However, publicly available records on the Internet Archive's Wayback Machine demonstrate that these products were offered for sale by Plaintiffs at least as early as October 23, 2012, more than one year before the earliest possible January 6, 2014 priority date of the asserted patents.  (*E.g.*, *"Plaster J-Bead" Framed Linear Bar Grille*, Advanced Architectural Grilleworks (Internet Archive Wayback Machine), https://web.archive.org/web/20121023091032/http://www.aagrilles.com/custom-

fabrication/jbead (archived October 23, 2012; visited December 31, 2021) (offering the AAG100 and AAG330 for purchase).)

145.    For instance, the below images compare the AAG330 grille available for sale on Plaintiffs' website in 2012 (left) with images of the AAG330 available for sale today (right).  As these images demonstrate, the "patented" product and the prior art are practically identical.  (*Compare "Plaster J-Bead" Framed Linear Bar Grille*, Advanced Architectural Grilleworks (Internet Archive Wayback Machine), https://web.archive.org/web/20121023091032/http://www.aagrilles.com/custom-fabrication/jbead (archived October 23, 2012; visited December 31, 2021) (left below) *with Plaster J-Bead Frame® US Patent Nos. 9,765,988 10,871,305 – AAG2020*, Advanced Architectural Grilleworks, https://aagrilles.com/j-bead/plaster-j-bead-frame-for-bar-grilles/ (visited December 31, 2021) (right below).)  Any perceived cosmetic differences between the AAG100 and AAG330 products sold in 2012 and those sold today do not implicate the patent claims.

<table>
<tr><td align="center"><b>AAG 330 (October 23, 2012)</b></td><td align="center"><b>"Patented" AAG330 (Today)</b></td></tr>
</table>

 

146.    Installation instructions for these products available at least as early as May 25, 2012 confirm that the products sold more than one year before the earliest possible January 6, 2014 priority date are identical to the "patented" products sold today in all

material respects.  (*Installation Details*, Advanced Architectural Grillworks (Internet Archive Wayback Machine),

https://web.archive.org/web/20120525093732/http://www.aagrilles.com/installationdetails/linearbargrilles (archived May 25, 2012; visited December 31, 2021).)  Indeed, as demonstrated below, the prior art installation instructions appear to have served as a template for the specifications of the '988 and '305 Patents.  (*Compare Installation Details*, Advanced Architectural Grillworks (Internet Archive Wayback Machine),

https://web.archive.org/web/20120525093732/http://www.aagrilles.com/installationdetails/linearbargrilles (archived May 25, 2012; visited December 31, 2021) (left below) *with* '988 and '305 Patents, Fig. 4 (right below).)  Again, any perceived cosmetic differences between the AAG100 and AAG330 products sold in 2012 and those sold today do not implicate the patent claims.



| Installation Instructions (May 25, 2012) | '988 and '305 Patents, Fig. 4 |
|---|---|

147.    In short, Plaintiff AAG admits—and indeed, advertises—that its AAG100 and AAG330 grilles practice one or more claims of the asserted patents.  Although Plaintiff AAG has not specified which claims of the patents the AAG100 and AAG330 practice, they must practice at least independent claim 1 of the '988 Patent and independent claim 1 of the '305 Patent, which are the broadest claims of each patent.  But Plaintiff AAG offered both products for sale more than one year before the earliest possible priority date of the asserted patents.  Accordingly, these prior sales render at least independent claim 1 of the '988 Patent

and independent claim 1 of the '305 Patent invalid—and, if disclosed, would have prevented their issuance—under at least 35 U.S.C. §§ 102 and/or 103.

148.     Separately and additionally, although there may be perceived *cosmetic* differences between the versions of the "patented" AAG100 and AAG330 sold today and those sold in October 2012, counsel for Plaintiffs has admitted that there are no differences—cosmetic or otherwise—between the "patented" AAG100 and AAG330 sold today and those sold from December 2, 2013 onward. (*See* Dkt. No. 11, at 3 ("commercial embodiments of the '988 and '305 patents [] were first sold on or about December 2, 2013").) Because the '305 Application was a continuation-in-part, it is not necessarily entitled to the January 6, 2014 priority date of the '988 Patent. Accordingly, at least sales predating the '305 Application's March 31, 2017 filing date by more than one year may constitute invalidating prior art. Accordingly, these additional prior sales render at least independent claim 1 of the '305 Patent invalid—and, if disclosed, would have an additional, independent ground preventing its issuance—under at least 35 U.S.C. §§ 102 and/or 103.

**Why and How: The Prior Sales Are Non-Cumulative Prior Art, Which the Examiner Would Have Used to Reject At Least Claim 1 of the '988 Patent and Claim 1 of the '305 Patent**

149.     As AAG effectively admits—and advertises—AAG's prior sales disclose every element of at least claim 1 of the '988 Patent and claim 1 of the '305 Patent. Accordingly, if the prior sales had been presented to the USPTO examiner, the examiner would not have issued at least these claims.

150.     Indeed, the examiner issued the asserted patents only because the applicants intentionally deprived him of the very information he needed to make an informed decision.

As Mr. Roeper and Ms. Bruhnke acknowledged in their declarations, and as Mr. Weiss, a licensed patent attorney, was well aware, "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office *all information known to that individual* to be material to patentability."  37 C.F.R. § 1.56 (emphasis added).  Yet in the nearly *seven years* of patent prosecution that led to the issuance of the asserted patents, the applicants submitted only a single Information Disclosure Statement ("IDS") disclosing prior art to the USPTO.  Although that IDS was filed on May 15, 2017—at which point the applicants had been selling the "patented" AAG100 and AAG330 for at least approximately five years—the IDS listed only three prior art references, none of which related to the prior sales.

<table>
<tr><td colspan="7" align="right">PTO/SB/08a (07-09)<br>Approved for use through 07/31/2012. OMB 0651-0031<br>U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE</td></tr>
<tr><td colspan="7">Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.</td></tr>
</table>

| Substitute for form 1449/PTO<br><br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>*(Use as many sheets as necessary)*<br><br>Sheet \| 1 \| of \| 1 | **Complete if Known** | |
|---|---|---|
| | Application Number | 13/999,038 |
| | Filing Date | 1/6/14 |
| | First Named Inventor | L. Bruhnke et al. |
| | Art Unit | 3749 |
| | Examiner Name | |
| | Attorney Docket Number | P/332-6 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number<br><br>Number-Kind Code[2] *(if known)* | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | US- 5,082,083 | 01/21/1992 | Draffen | |
| | | US- 7,140,960 | 11/26/2006 | Pilger | |
| | | US- 7,771,259 | 08/10/2010 | Pettit | |
| | | US- | | | |
| | | US- | | | |

151.    Moreover, what little prior art the applicants disclosed was of limited relevance to the claims of the asserted patents.  For instance, U.S. Patent. No. 5,082,083 to Draffen disclosed a 1992 patent directed to a "wall mounted stereo speaker assembly."  (Pat.

No. 5,082,083, Abstract.)  As reflected in the figures reproduced below, this patent was generally not pertinent to the claims of the asserted patents.



152.    Similarly, U.S. Patent No. 7,140,960 to Pilger disclosed only "an adjustable boot hanger bracket."  (Pat. No. 7,140,960, Abstract.)  Again, as reflected in the figures reproduced below, this patent was generally not pertinent to the claims of the asserted patents.



153.    USPTO examiners do not have resources to search for prior art beyond patents and printed publications.  Accordingly, the examiner was reliant on the applicants to disclose any prior sales.  Because Mr. Roeper, Ms. Bruhnke, and Mr. Weiss violated this duty, the examiner never learned of these sales, and examined the applications considering only tangentially relevant prior art, such as the foregoing.  Given the character of the disclosed prior art, the prior sales would have been both non-cumulative and dispositive.

154.    Accordingly, if the applicants had satisfied their duty of candor and disclosed the prior sales of the AAG100 and AAG330 products to the examiner, he would not have allowed at least claim 1 of the '988 Patent and claim 1 of the '305 Patent.

**Intent: The Single Most Reasonable Inference Is That the Applicants Acted with Deliberate Intent to Deceive the USPTO**

155.     As detailed above, on information and belief, Mr. Roper and Ms. Bruhnke, at least in connection with their positions with Plaintiff AAG, were fully aware that AAG began selling its AAG100 and AAG330 grilles more than one year before the earliest possible January 6, 2014 priority date of the asserted patents.  As detailed above, on information and belief, Mr. Weiss was obligated and did to discuss such prior sales with Mr. Roeper and Ms. Bruhnke prior to filing the '988 and '305 Applications.  Moreover, as detailed above in paragraph 146, the fact that the installation instructions for the AAG100 and AAG330 products sold in 2012 were used as a template for the figures of the asserted patents further demonstrates that Mr. Weiss was fully aware of such prior sales.

156.     As they attested in their January 6, 2014 joint declaration, Mr. Roeper and Ms. Bruhnke were fully aware of their duty of candor to the USPTO.  As a patent attorney, Mr. Weiss was fully aware of his duty of candor to the USPTO.

157.     Mr. Roeper, Ms. Bruhnke, and Mr. Weiss feigned compliance with the duty of candor by filing a single May 15, 2017 IDS citing only three prior art references.  As that IDS—which enumerates patents related a "wall mounted stereo speaker assembly" and an "adjustable boot hanger"—reflects, the applicants fully understood that the duty of candor required disclosure of even tangentially related prior art.  Yet Mr. Roeper, Ms. Bruhnke, and Mr. Weiss withheld any disclosure regarding prior sales dating back to at least October 2012 of products that AAG advertises as "patented" by the '988 and '305 Patents.  Additionally, Mr. Roeper, Ms. Bruhnke, and Mr. Weiss failed to disclose sales of a purportedly updated version of these products "first sold on or about December 2, 2013," which Plaintiffs admit

were "commercial embodiments of the '988 and '305 patents," even though these sales predate the date of the '305 patent by nearly four years.  (*See* Dkt. No. 11, at 3 ("commercial embodiments of the '988 and '305 patents [] were first sold on or about December 2, 2013").)

158.    On information and belief, given that the prior sales are essentially identical to products the Plaintiffs advertise as "patented," Mr. Roeper, Ms. Bruhnke, and Mr. Weiss also understood that, if the prior sales were disclosed to the USPTO, the USPTO would not have issued at least claim 1 of the '988 Patent and claim 1 of the '305 Patent.

159.    The single most reasonable inference from these facts is that Mr. Roeper, Mr. Bruhnke, and Mr. Weiss deliberately withheld information regarding Plaintiff AAG's invalidating prior sales (including prior art documents reflecting the structure of the products sold) from the USPTO in a deliberate attempt to deceive the USPTO for the express purpose of obtaining patent claims that would have otherwise been denied.

160.    Accordingly, because at least claim 1 of the '988 Patent and claim 1 of the '305 patent were procured through inequitable conduct, all claims of the '988 and '305 Patents are unenforceable.

161.    Further, Dayus expects that discovery in this matter will yield additional examples of inequitable conduct.  For instance, one of Plaintiffs' local competitors, the similarly named but apparently unrelated Architectural Grille of Brooklyn, NY, advertises that it has sold strikingly similar "Spackle In J-Frame Grilles" since 1990.  (*Spackle In J-Frame Grilles*, Architectural Grille, https://www.archgrille.com/collections/spackle-in-j-frame (visited December 31, 2021).)  It is highly unlikely that Mr. Roeper and Ms. Bruhnke

were unaware of this fact, but they failed to disclose Architectural Grille's sales to the USPTO during prosecution of the '988 and '305 Patents.

### Seventh Defense
### (Notice and Damages)

162.     Plaintiffs' recovery for alleged infringement of the asserted patents is limited to any alleged infringement committed no more than six years prior to the filing of the Complaint, pursuant to 35 U.S.C. § 286.  To the extent Plaintiffs failed to comply with the notice provisions of 35 U.S.C. § 287, Plaintiffs may not recover damages for alleged infringement committed prior to the filing of their Complaint.

### Eighth Defense
### (Not an Exceptional Case)

163.     Plaintiffs cannot prove that this is an exceptional case justifying an award of attorney fees against Dayus pursuant to 35 U.S.C. § 285.

### Ninth Defense
### (No Trademark Infringement)

164.     Dayus has not infringed the purported Plaster J-Bead mark.

### Tenth Defense
### (No Likelihood of Confusion)

165.     Dayus' activities create no likelihood of confusion.  For instance, there is no likelihood of confusion between the Plaster J-Bead mark and the generic, descriptive, non-distinctive term, "J-Bead."

### Eleventh Defense
### (No Dilution)

166.     Dayus' activities pose no risk of dilution to the Plaster J-Bead mark.

**Twelfth Defense**
**(Trademark Invalidity and/or Unenforceability)**

167.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' purported Plaster J-Bead mark is invalid, unenforceable, and/or unprotectable, and it cannot form the basis of an infringement or unfair competition claim under state or federal law and should be canceled.  At a minimum, the Plaster J-Bead mark is descriptive, generic, non-distinctive, and lacks secondary meaning.

**Thirteenth Defense**
**(Fair Use)**

168.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of fair use. At a minimum, this doctrine permits use of the generic, descriptive, non-distinctive term "J-Bead" to describe products.

**Fourteenth Defense**
**(Good Faith Prior Use)**

169.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of good faith prior use.

**Fifteenth Defense**
**(Equitable Defenses)**

170.    Plaintiffs' claims are barred in whole or in part under principles of equity, including without limitation, laches, waiver, estoppel, acquiescence, and/or unclean hands.

**Sixteenth Defense**
**(License/Acquiescence)**

171.    Dayus' alleged use of the '988 Patent, the '305 Patent, and/or the Plaster J-Bead mark is authorized by a written, oral, or implied license, or Plaintiffs have acquiesced to Dayus' use of the '988 Patent, the '305 Patent, and/or the Plaster J-Bead mark.

**Seventeenth Defense**
**(Preemption)**

172.    Plaintiffs' claims are barred, in whole or in part, because they are preempted.

**Eighteenth Defense**
**(Statute of Limitations)**

173.    Plaintiffs' claims are barred, in whole or in part, by applicable statues of limitations.

**Nineteenth Defense**
**(Equitable Estoppel)**

174.    The asserted patents and trademark are limited and/or unenforceable by reason of equitable estoppel.  At a minimum, because Plaintiffs raised identical claims in *INV Holdings Inc. and Advanced Arch Grilleworks, Inc. v. Dayus Register & Grille Inc.* (E.D.N.Y. Case. No. 2:21-cv-02786) and dismissed that action without any reservation of rights, Plaintiffs are estopped from re-raising the same claims here.

**Twentieth Defense**
**(No Damages)**

175.    Plaintiffs' claims are barred, in whole or in part, because Dayus has not caused Plaintiffs any damages and Plaintiffs' have suffered no damages, or, if Plaintiffs did suffer any injury or damages, which is expressly denied, then said injury or damages resulted from Plaintiffs' own acts and/or omissions.

**Twenty-First Defense**
**(No Injunctive Relief)**

176.    Plaintiffs are not entitled to injunctive relief because any alleged injury to Plaintiffs is not immediate or irreparable, Plaintiffs have an adequate remedy at law, and/or public policy concerns weigh against any injunctive relief.

**Reservation of Rights**

177.     Dayus hereby gives notice that it intends to rely upon any other defense that may become available or come to light in this case, and hereby reserves the right to amend this Answer to assert any such defense.

**Dayus' Demand for Jury Trial on Plaintiffs' Claims**

178.     Dayus hereby respectfully requests a trial by jury on all issues so triable.

**Dayus' Demand for Relief on Plaintiffs' Claims**

179.     Dayus respectfully requests the following relief:

a.   a judgment in favor of Dayus, and against Plaintiffs, on all of Plaintiffs' claims against Dayus, with Plaintiffs being awarded no relief of any kind for their Complaint, including but not limited to their request for damages and injunctive relief;

b.   an order finding that this is an exceptional case and awarding Dayus its respective costs, expenses, disbursements, and reasonable attorneys' fees in defending against Plaintiffs' claims under 35 U.S.C. § 285, 35 U.S.C. § 1117, and all other applicable statutes, rules, and common law; and

c.   such other relief, in law or equity, as this Court deems just and proper.

## DAYUS' COUNTERCLAIMS

1.      Dayus Register & Grille, Inc. ("Dayus") brings these counterclaims against

INV Holdings Inc. ("INV") and Advanced Arch Grilleworks, Inc. ("AAG") (collectively

"Counterclaim-Defendants") for a judgment arising under the Declaratory Judgment Act, 28

U.S.C. §§ 2201 *et seq.*, the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, and the

Trademark Laws of the United States, 15 U.S.C. §§ 1051 *et seq.*, declaring that (1) all claims

of U.S. Patent Nos. 9,765,988 ("the '988 Patent") and 10,871,305 ("the '305 Patent") are not

infringed, are invalid, and are unenforceable; and (2) Trademark Registration No. 5,132,735

(the "Plaster J-Bead" mark) is not infringed, is invalid, and is not enforceable.

### The Parties

2.      Dayus is an Ontario corporation located at 290 Pulleyblank St. R.R. #1,

Windsor, Ontario, Canada N9A 6J3.

3.      Counterclaim-Defendants allege in paragraph 5 of the Complaint that INV is a

New York corporation with its principal place of business at 149 Denton Avenue, New Hyde

Park, New York 11040.

4.      Counterclaim-Defendants allege in paragraph 6 of the Complaint that AAG is

a New York corporation with its principal place of business at 149 Denton Avenue, New

Hyde Park, New York 11040.

### Jurisdiction and Venue

5.      This action arises in part under the Patent Laws of the United States, Title 35

of the United States Code and the Trademark Laws of the United States, Title 15, Chapter 22

of the United States Code, and the Lanham Act, 15 U.S.C. § 1051 *et seq.*  This Court has

subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202 and 15 U.S.C. § 1121.

6.      Further, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Dayus and Counterclaim-Defendants are diverse in citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Personal jurisdiction and venue in this District are proper at least given Counterclaim-Defendants' claims against Dayus.  Venue is also proper under 28 U.S.C. § 1391.

## Background

8.      Counterclaim-Defendants have filed suit alleging that Dayus infringes or has infringed the '988 Patent, the '305 Patent, and the Plaster J-Bead mark.

9.      Dayus has denied that it infringes or has infringed any valid claim of the '988 Patent or the '305 Patent, and has denied that it infringes the Plaster J-Bead mark.

10.      Dayus has further contested the validity and enforceability of the '988 Patent, the '305 Patent, and the Plaster J-Bead mark.

11.      Based on the foregoing, there is an actual, immediate, and justiciable controversy between Counterclaim-Defendants and Dayus as to infringement, validity, and unenforceability of the '988 and '305 Patents.

12.      Counterclaim-Defendants have engaged in false advertising on their website, including the false and misleading statements that they have been operating for more than 75 years, and that they have been making the subject-matter claimed in the '988 and '305 Patents for more than 75 years.

**First Counterclaim**
**(Declaratory Judgment of No Infringement/Invalidity of the '988 Patent)**

13.     Dayus incorporates by reference all preceding and succeeding paragraphs of these Counterclaims and Dayus' Answer.

14.     Dayus has not infringed and does not infringe any valid claim of the '988 Patent, either directly, indirectly, literally, or under the doctrine of equivalents.

15.     Accordingly, Dayus is entitled to a declaration that it has not infringed and does not infringe any valid claim of the '988 Patent, either directly, indirectly, literally, or under the doctrine of equivalents.

16.     The asserted claims of the '988 Patent are invalid for failure to meet the conditions of patentability, including but not limited to those set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

17.     Accordingly, Dayus is entitled to a declaration that the asserted claims of the '988 Patent are invalid under 35 U.S.C. § 101, 102, 103, and/or 112.

**Second Counterclaim**
**(Declaratory Judgment of No Infringement/Invalidity of the '305 Patent)**

18.     Dayus incorporates by reference all preceding and succeeding paragraphs of these Counterclaims and Dayus' Answer.

19.     Dayus has not infringed and does not infringe any valid claim of the '305 Patent, either directly, indirectly, literally, or under the doctrine of equivalents.

20.     Accordingly, Dayus is entitled to a declaration that it has not infringed and does not infringe any valid claim of the '305 Patent, either directly, indirectly, literally, or under the doctrine of equivalents.

21.     The asserted claims of the '305 Patent are invalid for failure to meet the conditions of patentability, including but not limited to those set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

22.     Accordingly, Dayus is entitled to a declaration that the asserted claims of the '305 Patent are invalid under 35 U.S.C. § 101, 102, 103, and/or 112.

### Third Counterclaim
### (Declaratory Unenforceability of the '988 Patent for Inequitable Conduct)

23.     Dayus incorporates by reference all preceding and succeeding paragraphs of these Counterclaims and Dayus' Answer.

24.     For the reasons set forth in Dayus' Sixth Affirmative Defense, the claims of the '988 Patent are unenforceable for inequitable conduct.

25.     Accordingly, Dayus is entitled to a declaration that the claims of the '988 Patent are unenforceable for inequitable conduct.

### Fourth Counterclaim
### (Declaratory Unenforceability of the '305 Patent for Inequitable Conduct)

26.     Dayus incorporates by reference all preceding and succeeding paragraphs of these Counterclaims and Dayus' Answer.

27.     For the reasons set forth in Dayus' Sixth Affirmative Defense, the claims of the '305 Patent are unenforceable for inequitable conduct.

28.     Accordingly, Dayus is entitled to a declaration that the claims of the '305 Patent are unenforceable for inequitable conduct.

### Fifth Counterclaim
### (Declaratory Judgment of No Infringement/Invalidity of the Plaster J-Bead Mark)

29.     Dayus incorporates by reference all preceding and succeeding paragraphs of

these Counterclaims and Dayus' Answer.

30.     Dayus has not infringed and does not infringe the Plaster J-Bead mark under

any doctrine or theory.

31.     Accordingly, Dayus is entitled to a declaration that it has not infringed and

does not infringe the Plaster J-Bead mark.

32.     The Plaster J-Bead mark is invalid.  At a minimum, the Plaster J-Bead mark is

descriptive, generic, non-distinctive, and lacks secondary meaning, at least for the reasons

described in Dkt. No. 11 at pages 27-30.

33.     Accordingly, Dayus is entitled to a declaration that the Plaster J-Bead mark is

invalid.

**Sixth Counterclaim**
**(Declaratory Judgment of Fair Use)**

34.     Dayus incorporates by reference all preceding and succeeding paragraphs of

these Counterclaims and Dayus' Answer.

35.     The Plaster J-Bead mark is descriptive, generic, non-distinctive, and lacks

secondary meaning, at least for the reasons described in Dkt. No. 11 at pages 27-30.

36.     Accordingly, Dayus is entitled to a declaration that the doctrine of fair use

permits it to use the term "J-Bead" and/or the Plaster J-Bead mark to describe products.

**Seventh Counterclaim**
**(False Advertising Under the Lanham Act)**

37.     Dayus incorporates by reference all preceding and succeeding paragraphs of

these Counterclaims and Dayus' Answer.

38.     Counterclaim-Defendants have made and are making misleading

34

representations of fact on at least the AAG website (https://aagrilles.com/) concerning the nature, characteristics, or qualities of their products, the duration of time that those products have been manufactured and sold by AAG, and the duration of time that AAG has been operating.

39.     Among other things, AAG states on its website that "[f]or over 75 years, our company has been an industry leading choice for the highest quality architectural grilles, decorative metal panels, HVAC grilles, perforated metal grilles, floor registers, Plaster J-Bead® * frame grilles and custom metal products."  Upon information and belief, the foregoing statement is false and misleading in at least two respects.

40.     *First*, upon information and belief, AAG has not been in business for "over 75 years," and it could not have been "an industry leading choice for the highest quality architectural grilles," or any of the other products listed, for the entire duration of that timespan.  On the contrary, on information and belief, AAG only began operating during Mr. Roeper's lifetime, as evidenced, *inter alia*, by his LinkedIn page, which identifies AAG as having been founded in 2007 (i.e., roughly 15 years ago, when it began "manufactur[ing] operations").).

41.     *Second*, AAG has not been "an industry leading choice for . . . Plaster J-Bead® frame grilles" for "over 75 years."  As noted above in connection with Dayus' Sixth Affirmative Defense, AAG first began selling "Plaster J-Bead® frame grilles" in 2012, not decades earlier, as is falsely and misleadingly claimed on AAG's website.  Moreover, upon information and belief, neither AAG nor any predecessors-in-interest were manufacturing grilles of any sort prior to roughly the mid-2000s.

42.     In addition, AAG states on its website that it was "[f]ounded by craftsmen and machinists 80 years ago."  Upon information and belief, the foregoing statement is false and misleading.  On the contrary, on information and belief, AAG only began operating during Mr. Roeper's lifetime, as evidenced, *inter alia*, by his LinkedIn page, which identifies AAG as having been founded in 2007 (i.e., roughly 15 years ago, when it began "manufactur[ing] operations").

43.     Counterclaim-Defendants' misrepresentations deceive consumers, who rely on Counterclaim-Defendants' false or misleading statements implying that their products, including those at issue in this litigation, are of a certain quality and have been made for a significant period of time, and that AAG is trustworthy company because of the duration of time that it has operated, and thus those misrepresentations have a material effect on consumers' purchasing decisions.

44.     Counterclaim-Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of Section 43(a) of the Lanham Act.

45.     Counterclaim-Defendants' false or misleading advertising has caused and is likely to continue to cause substantial injury to the public and to Dayus (including damages), and affects Dayus' activities in interstate commerce.

### Eighth Counterclaim
**(Violation of New York Deceptive Practices Act)**

46.     Dayus incorporates by reference all preceding and succeeding paragraphs of these Counterclaims and Dayus' Answer.

47.     Counterclaim-Defendants have made and are making misleading

representations of fact on at least AAG's website (https://aagrilles.com/) concerning the nature, characteristics, or qualities of their products, the duration of time that those products have been manufactured and sold by AAG, and the duration of time that AAG has been operating.

48.     Among other things, AAG states on its website that "[f]or over 75 years, our company has been an industry leading choice for the highest quality architectural grilles, decorative metal panels, HVAC grilles, perforated metal grilles, floor registers, Plaster J-Bead® * frame grilles and custom metal products."  Upon information and belief, the foregoing statement is false and misleading in at least two respects.

49.     *First*, upon information and belief, AAG has not been in business for "over 75 years," and it could not have been "an industry leading choice for the highest quality architectural grilles," or any of the other products listed, for the entire duration of that timespan.  On the contrary, on information and belief, AAG only began operating during Mr. Roeper's lifetime, as evidenced, *inter alia*, by his LinkedIn page, which identifies AAG as having been founded in 2007 (i.e., roughly 15 years ago, when it began "manufactur[ing] operations).").

50.     *Second*, AAG has not been "an industry leading choice for . . . Plaster J-Bead® frame grilles" for "over 75 years."  As noted above in connection with Dayus' Sixth Affirmative Defense, AAG first began selling "Plaster J-Bead® frame grilles" in 2012, not decades earlier, as is falsely and misleadingly claimed on AAG's website.  Moreover, upon information and belief, neither AAG nor any predecessors-in-interest were manufacturing grilles of any sort prior to roughly the mid-2000s.

51.     In addition, AAG states on its website that it was "[f]ounded by craftsmen and machinists 80 years ago."  Upon information and belief, the foregoing statement is false and misleading.  On the contrary, on information and belief, AAG only began operating during Mr. Roeper's lifetime, as evidenced, *inter alia*, by his LinkedIn page, which identifies AAG as having been founded in 2007 (i.e., roughly 15 years ago, when it began "manufactur[ing] operations).

52.     Counterclaim-Defendants' misrepresentations deceive consumers, who rely on Counterclaim-Defendants' false or misleading statements implying that their products, including those at issue in this litigation, are of a certain quality and have been made for a significant period of time, and that AAG is trustworthy company because of the duration of time that it has operated, and thus those misrepresentations have a material effect on consumers' purchasing decisions.

53.     Counterclaim-Defendants' conduct constitutes unfair and deceptive acts or practices in the conduct of a business, trade or commerce, in violation of N.Y. Gen. Bus. L. §§ 349, 350, and 350(a).

54.     Counterclaim-Defendants' false or misleading advertising has caused and is likely to continue to proximately cause substantial injury to the public and to Dayus, including actual damages.

### Demand for Jury Trial as to Dayus' Counterclaims

55.     Dayus respectfully requests a jury trial on all issues so triable with respect to its Counterclaims.

**<u>Prayer for Relief as to Dayus' Counterclaims</u>**

56.    Dayus requests the following relief:

a.    a judgment in favor of Dayus, and against Counterclaim-Defendants, on all of Dayus' claims against Counterclaim-Defendants;

b.    an order finding, declaring, and adjudging that all claims of the '988 Patent and the '305 Patent are invalid and/or unenforceable;

c.    an order finding, declaring, and adjudging that Dayus does not infringe any valid and enforceable claim of the '988 Patent or the '305 Patent, directly or indirectly, either literally or under the doctrine of equivalents, nor has it ever done so;

d.    an order finding, declaring, and adjudging that Dayus does not willfully infringe any valid and enforceable claim of the '988 Patent or the '305 Patent, nor has it ever done so;

e.    an order finding that this is an exceptional case and awarding Dayus its respective costs, expenses, disbursements, and reasonable attorneys' fees in defending against Plaintiffs' claims under 35 U.S.C. § 285, 35 U.S.C. § 1117, and all other applicable statutes, rules, and common law;

f.    actual damages, punitive damages, costs, and reasonable attorneys' fees, and permanent injunctive relief in connection with Dayus' claims for false advertising under the Lanham Act and the New York Deceptive Practices Act; and

g.    such other relief, in law or equity, as this Court deems just and proper.

DATED: July 15, 2022

Respectfully submitted,

/s/ Andrew D. Gish
Andrew D. Gish (*pro hac vice*)
  andrew@gishpllc.com
Marti A. Johnson (*pro hac vice*)
  marti@gishpllc.com
Raymond J. Bilderbeck (*pro hac vice*)
  ray@gishpllc.com
Edward L. Tulin (*pro hac vice*)
  edward@gishpllc.com
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(212) 518-2000
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of July 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Andrew Gish