## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

INV HOLDINGS INC. and ADVANCED     :
ARCH GRILLEWORKS, INC.,               :
                                          :   Civ. Action No.  2:21-cv-05107-GRB-ST

                  Plaintiffs,    :
        v.                            :
                                          :

DAYUS REGISTER & GRILLE, INC.,      :
                                          :

                  Defendant.    :

-------------------------------------------------------x

## PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.      BACKGROUND                                                              1

II.     CLAIM CONSTRUCTION LEGAL STANDARDS                                      2

III.    CONSTRUCTION OF CLAIM                                                   5

        A.  CONSTRUCTION OF  "A dry wall extrusion grille"                      5

        B.  CONSTRUCTION OF "flexible/flexible mounting flange"                 7

        C.  CONSTRUCTION OF "small recesses"                                    9

        D.  CONSTRUCTION OF "said sheet rock screw"                             10

        E.  CONSTRUCTION OF "special hardware or tools"                         11

        F.  CONSTRUCTION OF "accurately sized"                                  12

        G.  CONSTRUCTION OF "special angled edge"                              13

        H.  CONSTRUCTION OF "crisp, clear line set up"                          14

        I.   CONSTRUCTION OF "said frame being extended to at least ¾""          14

IV.    CONCLUSION                                                               15

# TABLE OF AUTHORITIES

*Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363 (Fed. Cir. 2013)...............pg 3

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353 (Fed. Cir. 2017).......................pg 2-3

*Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.* 55 F.3d 615
(Fed. Cir. 1995).................................................................................pg 3

*Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788 (Fed. Cir. 2019)..................pg 2-3

*Georgetown in Pacing Technologies, LLC v. Garmin International, Inc.*, 778 F.3d
1021 (Fed. Cir. 2015) .........................................................................pg 4

*Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008).............pg 9-15

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111
(Fed. Cir. 2004).................................................................................pg 3

*Markman v. Westview Instruments, Inc.* 52 F.3d 967 (Fed. Cir. 1995)...................pg 4

*Nazomi Commc'ns, Inc. v. Arm Holdings P.L.C.*, 403 F.3d 1364 (Fed. Cir. 2005)......pg 9-15

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).......................pg 3, 4, 9

*Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525 (9th Cir. 1986).......................pg 4

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008).....pg 9-15

*Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356 (Fed. Cir. 2004).......................pg 4

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 135 S. Ct. 831 (2015)...........pg 2

*Vitronics Corp. v. Conceptronic.*, 90 F.3d 1576 (Fed. Cir. 1996).........................pg 4

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
INV HOLDINGS INC. and ADVANCED    :
ARCH GRILLEWORKS, INC.,           :
                                  :   Civ. Action No.  2:21-cv-05107-GRB-ST
                    Plaintiffs,   :
          v.                      :
                                  :
DAYUS REGISTER & GRILLE, INC.,    :
                                  :
                    Defendant.    :
-------------------------------------------------------x
```

## PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 1 |
| II. | CLAIM CONSTRUCTION LEGAL STANDARDS | 2 |
| III. | CONSTRUCTION OF CLAIM | 5 |
| | A. CONSTRUCTION OF  "A dry wall extrusion grille" | 5 |
| | B. CONSTRUCTION OF "flexible/flexible mounting flange" | 7 |
| | C. CONSTRUCTION OF "small recesses" | 9 |
| | D. CONSTRUCTION OF "said sheet rock screw" | 10 |
| | E. CONSTRUCTION OF "special hardware or tools" | 11 |
| | F. CONSTRUCTION OF "accurately sized" | 12 |
| | G. CONSTRUCTION OF "special angled edge" | 13 |
| | H. CONSTRUCTION OF "crisp, clear line set up" | 14 |
| | I. CONSTRUCTION OF "said frame being extended to at least ¾"" | 14 |
| IV. | CONCLUSION | 15 |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------x

INV HOLDINGS INC. And ADVANCED       :
ARCH GRILLEWORKS, INC.,              :
                                     :   Civ. Action No.  2:21-cv-05107-GRB-ST
                        Plaintiffs,  :
        v.                           :
                                     :
                                     :
DAYUS REGISTER & GRILLE, INC.,       :
                                     :
                        Defendant.   :

----------------------------------------------------x

**PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF**

It is an established tenet of patent law that the claims define the invention and limitations. The purpose of claim construction is to determine the meaning and scope of the patent claims asserted to be infringed. When the parties raise an actual dispute regarding the proper scope of the claims, the court resolves the dispute. The words of a claim are given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art reviewing the intrinsic record at the time of the invention. The Court looks to the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art. When the ordinary meaning of the claim is readily apparent, claim construction involves little more than the application of the widely accepted meaning of commonly understood words.

I.      BACKGROUND

Plaintiffs brought this action to protect their rights and investments in and to the inventions embodied in U.S. Patent No. 9,765,988 ("the '988 patent") and U.S. Patent No. 10,871,305 ("the '305 patent"). Defendant has directly infringed and continues to directly

1

infringe claims 1-4, 7 and 9-23 of the '988 patent and claims 1-4, 8-11 and 14-16 of the '305 patent by offering to sell and selling within the United States, and importing and shipping into the United States its Bar Linear J-Bead Flange Grille having Model No. DABLJ and Bar Linear J-Bead Flange Removable Core Grille having Model No. DABLRJ (collectively "J-BEAD Grilles") which literally contain each and every element of those claims.

On September 19, 2017, the '988 patent entitled "Dry Wall Extrusion Grille" was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Lynne Bruhnke and Daniel Roeper as inventors and Oemetrix, LLC as assignee. The '988 patent issued from application Serial No. 13/999,038 ("the '038 application") filed on January 6, 2014 and published as Publication No. 2015-0192320 A1 on July 9, 2015. The inventions of the '988 patent are generally directed to a one piece dry wall extrusion grille.

On December 22, 2020, the '305 patent entitled "Dry Wall Extrusion Grille" was duly and legally issued by the USPTO to inventors Lynne Bruhnke and Daniel Roeper. The '305 patent issued from application Serial No. 15476,855 ("the '855 application") filed on March 31, 2017 and published as Publication No., US-2017-0205110 A1 on July 20, 2017. The inventions of the '305 patent are generally directed to a one piece dry wall extrusion grille and the '305 patent is a continuation in part of the '038 application and contains the specification of the '038 application.

II.    CLAIM CONSTRUCTION LEGAL STANDARDS

Claim construction is a question of law for the Court. *See, e.g.*, *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 795 (Fed. Cir. 2019); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 135 S. Ct. 831, 841 (2015). "The purpose of claim construction is to give claim terms the meaning understood by a person of ordinary skill in the art at the time of invention." *Aylus*

2

*Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1358 (Fed. Cir. 2017) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (*en banc*)). "There is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321.

"Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* At 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). "These sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (quoting *Innova/Pure Water*, 381 F.3d at 1116); *see also Continental Circuits*, 915 F.3d at 797. Extrinsic evidence is "less significant" and "less reliable" than the intrinsic record in determining the meaning of the claim language. *Phillips* at 1317-1318.

From this list of sources, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* At 1314. Claim construction begins with and focuses on the words of the claim. *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.* 55 F.3d 615, 619-20 (Fed. Cir. 1995). However, the claims "do not stand alone." *Phillips* at 1315. They are part of "'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims," and must therefore "be read in view of the specification." *Id.*

(quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978-79 (Fed. Cir. 1995)).

Accordingly, the specification "is always highly relevant to the claim construction analysis.

Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.*

(quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

"In addition to consulting the specification, . . . a court 'should also consider the patent's

prosecution history, if it is in evidence.'" *Id.* At 1317 (quoting *Markman*, 52 F.3d at 980). "Like

the specification, the prosecution history provides evidence of how the [United States Patent and

Trademark Office ("PTO")] and the inventor understood the patent." *Id.*

Further, constructions should be articulated so that the Court may, should the case

proceed to trial, "instruct the jury on the meanings to be attributed to all disputed terms used in

the claims in suit so that the jury will be able to 'intelligently determine the questions

presented.'" *Sulzer Textil A.G. v. Picanol N.V.*, 358 F. 3d 1356, 1366 (Fed. Cir. 2004) (quoting

*Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 532 (9th Cir.1986)). "[I]t is the duty of trial

courts in patent cases in which claim construction rulings on disputed claim terms are made prior

to trial and followed by the parties during the course of the trial to inform jurors both of the

court's claim construction rulings on all disputed claim terms and of the jury's obligation to

adopt and apply the court's determined meanings of disputed claim terms to the jury's

deliberations of the facts." *Sulzer*, 358 F.3d at 1366.

The Federal Circuit in *Georgetown in Pacing Technologies, LLC v. Garmin

International, Inc.*, 778 F.3d 1021 (Fed. Cir. 2015) held that the preamble phrase "repetitive

motion pacing system" in a pacing tool patent was limiting.  The Federal Circuit relied on the

specification's statement that all enumerated objects of the invention "are accomplished...by a

repetitive motion pacing system that includes ...a data storage and playback device adapted to

producing the sensible tempo". This statement, the Federal Circuit held, was an unmistakable

disavowal of all systems that do not produce a sensible tempo, despite the disclosure of an

embodiment in the specification where the system does not produce a sensible tempo. Thus, the

preamble limited the claim scope to systems that produce a sensible tempo.

One of ordinary skill in the art at the time of the invention would be someone with either the

proper education or experience in the field of HVAC installation, general contracting,

Mechanical Engineering, HVAC Finishing, spackling and Architecture.

III.    CONSTRUCTION OF CLAIM:

    A. CONSTRUCTION OF "A dry wall extrusion grille"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| A dry wall extrusion grille [comprising]: | '988 patent, cl. 1; '305 patent cl. 1, 10, 11 | A grille used for dry wall, including sheet rock, gypsum, cement board, wall board, plaster and green board, which is formed via the process of a high pressure force pushing material through a die.<br><br>Cross-Reference(s) to Rule 6 Disclosures: pgs. 1, 11, 14-15, 16 | Non-limiting; alternatively, "a product-by process limitation directed to a grille, for use with dry wall, which was made at least in part by a process of forcing material through a die to form a desired shape"<br><br>Cross-Reference(s) to Rule 7 Disclosures: pgs. 11-12, 22-24, 26-27, 38-40, 42-43, 50-52 |

Plaintiffs contend that the term "a dry wall extrusion grille" in the claims of the '988 and

'305 patent should be construed according to the meaning that it has to one of ordinary skill in

the art at the time of the invention: a grille used for dry wall, including sheet rock, gypsum, cement board, wall board, plaster and green board, which is formed via the process of a high pressure force pushing material through a die.  It does not necessarily mean that all parts are formed by a process of extrusion.  Defendant, in contrast states that the preamble is non-limiting, or alternatively, a product by process limitation directed to a grille, for use with dry wall, which was made at least in part by a process of forcing material through a die to form a desired shape.

As stated above the first thing to review are the claims themselves.  Defendant has not stated that there are any differences between the claims referred to above regarding the limitation of a dry wall extrusion grille.  Specifically, claim 1 of the '305 patent in the body of the claim refers to "an extrusion grille".

The specification of a patent includes the Title, Abstract, Field of the Invention and Summary of the Invention.  With regards to both the '988 and '305 patent, the Title of the invention is "DRY WALL EXTRUSION GRILLE".  The Abstract refers to a "dry wall extrusion grille" .  The field of the invention states "the present invention relates to a dry wall extrusion grille..." 1:5-6 of the '988 patent and 1:10 of the '305 patent.  The Summary of the Invention states "the present invention relates to a dry wall extrusion grille." 1:47 of the '988 patent and 1:52 of the '305 patent.  Claims 5, 8-11, 13, 14, and 17-23 of the '988 patent and Claims 1 and 7-9 of the '305 patent all refer to an extrusion grille in the body of the claims.  Therefore, the claims and specification show that the term "drywall extrusion grille" is limiting.

With regards to the file history of the '988 patent, the Examiner in the Office Actions of 3/9/ and 7/26/16 16, referred to prior art as having a "dry wall extrusion grille".  In the responses, including the response of 5/31/16, Applicant argued that the prior art does not teach a "dry wall extrusion grille".  With regards to the file history of the '305 patent, the Examiner in the Office

Actions of 2/22/18, 5/1/19, 1/27/20 referred to prior art as having "a dry wall extrusion grille".

In the response of 4/8/18 Applicant added the term "extrusion grille" into claim 1 as discussed in

the interview with the Examiner on March 19, 2018.  In the response of 11/1/19, Applicant

responded that the prior art does not teach a dry wall extrusion grille.  Applicant defined the term

"dry wall extrusion grille in the file history in the response to the office action dated 7/27/20, as

stated above, wherein the term does not necessarily mean that all parts are formed by a process

of extrusion.  Applicant further argued in this response that the prior art does not teach an

extrusion section.  Therefore, the file histories show that the Applicant and the Examiner

believed that the term "dry wall extrusion grille" is limiting.

The specification shows all enumerated objects of the invention relate to "a dry wall

extrusion grille".  The Federal Circuit has held that this is an unmistakable disavowal of all

systems that are not a dry wall extrusion grille.  Thus, the preamble limits the claim scope to a

dry wall extrusion grille.  There is no intent in the specification to include any grille other than a

dry wall extrusion grille.

B.  CONSTRUCTION OF "flexible/flexible mounting flange"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| Defendant- flexible<br><br>Plaintiff- flexible mounting flange | '988 patent, cl. 1; '305 patent cl. 1, 10, 11 | Understood by one of ordinary skill in the art and defined in the specification as a flange that can be shaped or formed to follow the contour of a wall or ceiling surface with sufficient strength to hold and provide a structural base for secure mounting of a | capable of being bent, usually without breaking; easily bent<br><br>Cross-Reference(s) to Rule 7 Disclosures: pgs. 15-16, 19, 22-25, 30, 32, 34, 38-41, 45-47, 50-53 |

| | | linear bar grille core.<br><br>Cross-Reference(s) to Rule 6 Disclosures: 2, 12, 16, 17-18 | |
|---|---|---|---|

Plaintiffs contend that the term "flexible mounting flange" in the claims of the '988 patent and '305 patent should be construed according to the meaning that it has to one of ordinary skill in the art at the time of the invention: a flange that can be shaped or formed to follow the contour of a wall or ceiling surface with sufficient strength to hold and provide a structural base for secure mounting of a linear bar grille core. Defendant in contrast defines only the term "flexible" to mean capable of being bent usually without breaking; easily bent.

First the claims of both the '988 and '305 patents specifically states a flexible mounting flange, so the term flexible must be taken in context with a mounting flange. Second, the invention relates to a dry wall extrusion grille. 1:47 of the '988 patent and 1:52 of the '305 patent. The dry wall extrusion grille is fastened to a wall or ceiling. 1:53-54 of the '988 patent and 1:57-58 of the '305 patent. The extrusion grille must have exceptional strength using aluminum material-thus enabling safe use in ceiling applications. 2:39-41 of the '988 patent and 2:46-48 of the '305 patent. Therefore, the flange cannot be "easily bent" as defined by Defendant, for its designed use as a mounting flange used in ceilings and walls as taught in the specification. The use of the flexible mounting flange in construction with walls and ceilings cannot be a mounting flange that is easily bent. Therefore, Plaintiffs' definition of a flange that can be shaped or formed to follow the contour of a wall or ceiling surface with sufficient strength to hold and provide a structural base for secure mounting of a linear bar grille core is the only definition to make logical sense to a person of ordinary skill in the art.

C.  CONSTRUCTION OF "small recesses"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| small recesses | '988 patent, cl. 1; '305 patent, cl. 1, 10, 11 | Not indefinite. Understood by one of ordinary skill in the art and defined in the specification as indentations, or concave channels below surface plane.<br><br>Cross-Reference(s) to Rule 6 Disclosures: 2, 12, 16, 18 | Indefinite Cross-Reference(s) to Rule 7 Disclosures: pgs. 8, 16-17, 22, 24-25, 32, 38, 40-41, 46, 50, 52, 53 |

Plaintiffs contend that the term "small recesses" should be construed according to the meaning that it has to one of ordinary skill in the art at the time of the invention: indentations, or concave channels below surface plane.  Defendant in contrast states that the term is indefinite.

Indefiniteness arguments are disfavored at the claim construction stage.  See *Nazomi Commc'ns, Inc. v. Arm Holdings, P.L.C.*, 403 F.3d 1364, 1368-69 (Fed. Cir. 2005) (warning that courts must be wary of "put[ting] the validity cart before the claim construction horse" because validity turns on factual questions that are difficult to parse at the claim construction state); see also *Philips*, 415 F.3d at 1327 ("[W]e have certainly not endorsed a regime in which validity analysis is a regular component of claim construction.")  A party asserting indefiniteness at claim construction faces a heavy burden to show that a "person of ordinary skill in the art could not determine the bounds of the claims, the claims were insolubly ambiguous." *Halliburton Energy Servs., Inc. v. M-I L.L.C.*, 514 F.3d 1244, 1249 (Fed. Cir. 2008); see also *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.* 537 F.3d 1357, 1371 (Fed. Cir. 2008) ("[B]y finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the

9

statutory presumption of patent validity.") (internal quotation marks omitted).

In the file history, in the response to Office Action of 12/27/16 of the 988 patent,

Applicant defined the term indented slots as requested by the Examiner as "small recesses in a

mounting flange that receive plaster, joint compound or mud". Applicant pointed to support for

this definition as shown in the figures and described in the specification.

Examiner did not object to this definition or the support thereof.

D.  CONSTRUCTION OF "said sheet rock screw"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| said sheet rock screw | '988 patent cl. 4 | Not indefinite. Understood by one of ordinary skill in the art with industry nomenclature for fasteners with spiral threads for attachment to sheetrock, gypsum, wall board, green board, etc. Cross-Reference(s) to Rule 6 Disclosures: Pg 4 | Indefinite Cross-Reference(s) to Rule 7 Disclosures: pgs. 8, 18, 33, 47 |

Plaintiffs contend that the term "said sheet rock screw" should be construed according to

the meaning it has to one of ordinary skill in the art at the time of the invention: fasteners with

spiral threads for attachment to sheetrock, gypsum, wall board, green board, etc. Defendant in

contrast states that the term is indefinite.

As noted above, indefiniteness arguments are disfavored at the claim construction stage.

*Nazomi Commc'ns*, 403 F.3d at 1368-69, *Halliburton Energy*, 514 F.3d at 1249; see also *Star*

*Scientific*, 537 F.3d at 1371.

E.  CONSTRUCTION OF "special hardware or tools"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| special hardware or tools | '988 patent, cl. 11 | Not indefinite. Understood by one of ordinary skill in the art and defined as tools that would include sheet rock knife, Phillips screwdriver or plaster knife.<br><br>Cross-Reference(s) to Rule 6 Disclosures: Pg 6 | Indefinite Cross-Reference(s) to Rule 7 Disclosures: pgs. 8, 18, 34, 47 |

Plaintiffs contend that the term "said special hardware or tools" should be construed according to the meaning that it has to one of ordinary skill in the art at the time of the invention: tools that would include sheet rock knife, Phillips screwdriver or plaster knife.  Defendant in contrast states that the term is indefinite.

As noted above, indefiniteness arguments are disfavored at the claim construction stage. *Nazomi Commc'ns*, 403 F.3d at 1368-69, *Halliburton Energy*, 514 F.3d at 1249; see also *Star Scientific*, 537 F.3d at 1371.

The Examiner in the Office Action of March 9, 2016 for the '988 patent, specifically stated that the term "said special hardware or tools" is understood as requiring a screwdriver type tool to install the fasteners.

F.  CONSTRUCTION OF "accurately sized"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| accurately sized | '988 patent, cl. 11 | Not indefinite. Understood by one of ordinary skill in the art and defined in the specification as the pre-punched holes sized for sheet rock screws so as not to need special hardware or tools for installation.<br><br>Cross-Reference(s) to Rule 6 Disclosures: Pg 6 | Indefinite Cross-Reference(s) to Rule 7 Disclosures: pgs. 8, 18, 34, 47 |

Plaintiffs contend that the term "accurately sized" should be construed according to the meaning that it has to one of ordinary skill in the art at the time of the invention: pre-punched holes sized for sheet rock screws so as not to need special hardware or tools for installation. Defendant in contrast states that the term is indefinite.

As noted above, indefiniteness arguments are disfavored at the claim construction stage. *Nazomi Commc'ns*, 403 F.3d at 1368-69, *Halliburton Energy*, 514 F.3d at 1249; see also *Star Scientific*, 537 F.3d at 1371.

Accurately sized within claim 11, the claim language refers to pre-punched holes for standard wall board/sheet rock screws.

G.  CONSTRUCTION OF "special angled edge"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| special angled edge | '988 patent, cl. 21, 22 | Not indefinite. Understood by one of ordinary skill in the art and defined in the specification as providing a step or guide for a standard spackle knife or plaster knife to rest upon. Cross-Reference(s) to Rule 6 Disclosures: Pgs. 9-10 | Indefinite<br><br>Cross-Reference(s) to Rule 7 Disclosures: pgs. 8, 21, 36-37, 49 |

Plaintiffs contend that the term "special angled edge" should be construed according to the meaning that it has to one of ordinary skill in the art at the time of the invention: providing a step or guide for a standard spackle knife or plaster knife to rest upon.  Defendant in contrast states that the term is indefinite.

As noted above, indefiniteness arguments are disfavored at the claim construction stage. *Nazomi Commc'ns*, 403 F.3d at 1368-69, *Halliburton Energy*, 514 F.3d at 1249; see also *Star Scientific*, 537 F.3d at 1371.

In claim 21 the claim language specifically refers to a special angled edge "that provides a step for a standard spackle knife to rest".

13

H.  CONSTRUCTION OF "crisp, clear line set up"

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| crisp, clean line set up | '988 patent, cl. 22 | Not indefinite. Understood by one of ordinary skill in the art and defined in the specification as a smooth, uniform line.<br><br>Cross-Reference(s) to Rule 6 Disclosures: Pg. 10 | Indefinite Cross-Reference(s) to Rule 7 Disclosures: pgs. 8, 21, 37, 49 |

Plaintiffs contend that the term "crisp, clear line set up" should be construed according to the meaning that is has to one of ordinary skill in the art at the time of the invention: a smooth, uniform line.  Defendant in contrast states that the term is indefinite.

As noted above, indefiniteness arguments are disfavored at the claim construction stage. *Nazomi Commc'ns*, 403 F.3d at 1368-69, *Halliburton Energy*, 514 F.3d at 1249; see also *Star Scientific*, 537 F.3d at 1371.

I.      CONSTRUCTION OF "said frame being extended to at least ¾""

| TERMS | CLAIMS | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| said frame being extended to at least ¾" | '305 patent, cl. 10 | Not indefinite. Understood by one of ordinary skill in the art and defined in the specification as the frame projected into a duct or wall extended by at least 3/4".<br><br>Cross-Reference(s) to Rule 6 Disclosures: | Indefinite Cross-Reference(s) to Rule 7 Disclosures: pgs. 8, 24, 52 |

14

| | Pg 16 | |
|---|---|---|

Plaintiffs contend that the term "said frame being extended to at least ¾" should be construed according to the meaning that it has to one of ordinary skill in the art at the time of the invention: the frame projected into a duct or wall extended by at least ¾". Defendant in contrast states that the term is indefinite.

As noted above, indefiniteness arguments are disfavored at the claim construction stage. *Nazomi Commc'ns*, 403 F.3d at 1368-69, *Halliburton Energy*, 514 F.3d at 1249; see also *Star Scientific*, 537 F.3d at 1371.

In Claim 13, the claim language itself refers to the 3/4" deep into an opening that the extrusion grille is installed in a wall board.

IV.    CONCLUSION

Based on the intrinsic evidence being the words of the claims themselves, the specification and the prosecution history, plaintiffs believe that there is support for their interpretation of the disputed claim elements.


Dated: September 30, 2022                          Respectfully Submitted,

                                                   /s/Philip M. Weiss/

                                                   Philip M. Weiss
                                                   Weiss & Weiss
                                                   410 Jericho Tpke, Suite 105
                                                   Jericho, NY 11753
                                                   (516) 739-1500

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on this 30th day of September, 2022, I served the foregoing document by email on counsel of record.

/s/Philip M. Weiss/

Philip M. Weiss
Weiss & Weiss
410 Jericho Turnpike, Suite 105
Jericho, NY 11753
(516) 739-1500