## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

INV HOLDINGS INC. and ADVANCED
ARCH GRILLEWORKS INC.

       Plaintiffs,

    vs.

DAYUS REGISTER & GRILLE, INC.,

       Defendant.

Civ. A. No. 2:21-cv-05107-GRB-ST

## <u>DEFENDANT'S RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

I.    BACKGROUND ON THE ASSERTED PATENTS ........................................... 2

II.   LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION .............................. 4

III.  DEFENDANT'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED ................ 5

   A.   The Preamble Is Not Limiting ........................................................... 5

   B.   "Flexible Mounting Flange" ............................................................. 9

   C.   Multiple Claim Terms Are Indefinite ............................................... 14

IV.  CONCLUSION ................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286, 1298 (Fed. Cir. 2014) ............................................................................10

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
919 F.3d 1320 (Fed. Cir. 2019) ........................................................................................6

*Biosig Instruments, Inc. v. Nautilus*, *Inc.*
783 F.3d 1374 (Fed. Cir. 2015) ......................................................................................14

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) ..........................................................................................................9

*Brazabra Corp. v. Ce Soir Lingerie Co.*,
No. 1:18-CV-683-RP, 2019 WL 13136348 (W.D. Tex. Aug. 15, 2019) ................................15

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc*.,
289 F.3d 801 (Fed. Cir. 2002) ............................................................................1, 5, 7, 8

*Chef Am., Inc. v. Lamb–Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004) ......................................................................................16

*Chewy, Inc. v. International Business Machines. Corp.*,
No. 21-cv-1319 (JSR), 2022 WL 1500624 (S.D.N.Y. May 12, 2022) ...............................5

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*,
No. 20-CV-06469-EMC, 2021 WL 3037700 (N.D. Cal. July 19, 2021) ...........................6

*Datamize LLC v. Plumtree Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) ......................................................................................19

*Eidos Display, LLC v. AU Optronics Corp*.,
779 F.3d 1360 (Fed. Cir. 2015) ........................................................................................5

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) ..........................................................................................5

*Ernie Ball, Inc. v. Earvana, LLC*,
502 F. App'x 971 (Fed. Cir. 2013) ..................................................................................14

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014) ......................................................................................11

*Haliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)..................................................................................16

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
    527 F.3d 1379 (Fed. Cir. 2008).....................................................................................2

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
    No. 2:16-CV-505, 2017 WL 2672616 (E.D. Tex. June 21, 2017) ............................17

*Imperium (IP) Holdings, Inc. v. Apple, Inc.*,
    920 F. Supp. 2d 747 (E.D. Tex. 2013).............................................................15, 17

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
    No. CV 13-1668-LPS, 2016 WL 4363485 (D. Del. Aug. 12, 2016)...................15, 16

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)..................................................................................14

*K–2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)..................................................................................16

*Koninkliljke Philips N.V. v. Zoll Med. Corp.*,
    656 F. App'x 504 (Fed. Cir. 2016)............................................................................4, 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014).......................................................................................... *passim*

*Nazomi Communications, Inc. v. Arm Holdings, P.L.C.*,
    403 F.3d 1364 (Fed. Cir. 2005)....................................................................................5

*Pacing Technologies, LLC v. Garmin International, Inc.*,
    778 F.3d 1021 (Fed. Cir. 2015)....................................................................................8

*Renishaw PLC v. Marposs Soieta' per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998)..................................................................................10

*Seoul Semiconductor Co. v. Satco Prod., Inc.*,
    570 F. Supp. 3d 59 (E.D.N.Y. 2021) ........................................................................13

*Soter Technologies, LLC v. IP Video Corporation*,
    20 CV 2989 (GRB)(AKT), 2021 WL 4553188 (E.D.N.Y. Oct. 5, 2021) ............4, 10

*Superior Fireplace Co. v. Majestic Products Co.*,
    270 F.3d 1358 (Fed. Cir. 2001)..................................................................................17

*Uni-Sys., LLC v. United States Tennis Ass'n Nat'l Tennis Ctr. Inc.*,
    No. 17-CV-147(KAM)(CLP), 2020 WL 3960841 (E.D.N.Y. July 13, 2020)..............14, 15, 16

**EXHIBIT LIST**

| Exhibit | Description |
|---|---|
| A | U.S. Patent No. 9,765,988 |
| B | U.S. Patent No. 10,871,305 |
| C | Prosecution History for U.S. Patent No. 9,765,988 |
| D | Prosecution History for U.S. Patent No. 10,871,305 |
| E | U.S. Patent No. 7,771,259 ("Pettit") |
| F | Excerpt from Tool and Manufacturing Engineers Handbook, Volume 8, Plastic Part Manufacturing (4th ed. 1996) |
| G | Definition of "Flexible" from Dictionary.com |
| H | Definition of "Flexible" from Cambridge English Dictionary |
| I | Definition of "Flexible" from Collins English Dictionary |
| J | Definition of "Angled" from Vocabulary.com |
| K | Definition of "Angled" from Cambridge English Dictionary |

## TABLE OF ABBREVIATIONS[1]

| Term | Meaning |
|---|---|
| '305 patent | U.S. Patent No. 10,871,305 |
| '988 patent | U.S. Patent No. 9,765,988 |
| Asserted Claims | Claims 1-4, 7, and 9-23 of the '988 patent and claims 1-4, 8-11, and 14-16 of the '305 patent |
| Asserted Patents | '305 patent and '988 patent, collectively |
| Defendant | Dayus Register & Grille, Inc. |
| Plaintiffs | INV Holdings Inc. and Advanced Arch Grilleworks, Inc., collectively |

---

[1] Unless otherwise noted, all emphases have been added and all internal citations have been omitted.

## PRELIMINARY STATEMENT

Pursuant to the Joint Discovery Plan (Dkt. No. 19) and Local Patent Rule 12(b),

Defendant hereby responds to Plaintiffs' Opening Claim Construction Brief (Dkt. No. 31).  The

parties have essentially three claim construction disputes that require resolution:

    i.    **_Whether the Preamble Is Limiting_**:  The preamble that appears in all Asserted Claims should be construed as non-limiting, in accordance with the well-established precedent that a patent preamble is not limiting unless "it recites essential structure or steps," or is "'necessary to give life, meaning, and vitality' to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc*., 289 F.3d 801, 808 (Fed. Cir. 2002).  The body of the claims recites a structurally complete invention, and the preamble gives no life, meaning, or vitality to the claims.

    ii.    **_Meaning of "Flexible Mounting Flange"_**:  The term "flexible mounting flange" should be construed consistently with the claims, specification, prosecution history, and extrinsic evidence—namely, as a mounting flange that can be easily bent without breaking.  Plaintiffs instead ask the Court to jettison the plain and ordinary meaning of flexible, and propose that the claimed flange is one "that can be shaped or formed to follow the contour of a wall or ceiling surface with sufficient strength to hold and provide a structural base for secure mounting of a linear bar grille core."  Plaintiffs' proposal is entirely untethered to the intrinsic or extrinsic evidence, and should be rejected.

    iii.    **_Whether Certain Terms are Indefinite_**:  Plaintiffs never cite the leading Supreme Court decision governing indefiniteness:  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014).  Instead, Plaintiffs rely on outdated and inapplicable caselaw, and a brazen attempt to rewrite the claim language.  The use of subjective and undefined claim terms (such as "special" and "small"), and the lack of antecedent basis (such as for "said sheet rock screw") fail to define the claim scope with reasonable certainty, and renders them indefinite.

As noted above, Plaintiffs appear to have overlooked critical and binding caselaw.  But

Plaintiffs' positions are flawed in two additional and fundamental respects.  *First*, Plaintiffs failed

to submit any evidence in support of their proposed constructions, although Local Patent Rule

12(a) requires that any such evidence be submitted with their opening brief.  Plaintiffs' brief thus

consists entirely of attorney argument, with no supporting evidence.  By contrast, Defendant has

timely submitted intrinsic evidence (the Asserted Patents and prosecution histories), and extrinsic

evidence (dictionary definitions), which demonstrate that its construction should be adopted.

*Second*, Plaintiffs invite this Court to commit the "cardinal sin" of claim construction:  to rewrite problematic and unclear claims.  But as has long been recognized by the Federal Circuit, "[c]ourts cannot rewrite claim language."  *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008).  The Court should reject this misguided and improper effort, and instead adopt the constructions that Defendant proposes.

## I.     BACKGROUND ON THE ASSERTED PATENTS

The Asserted Patents describe a grille cover for an air vent in a familiar configuration that has been used for decades.  It is shown, for instance, in Figure 5 of the Asserted Patents:



This well-known configuration includes a mounting apparatus (referred to as a "flange") that may be covered with drywall compound or plaster when installed to provide a smooth, finished appearance, as shown below in Fig. 6 of the Asserted Patents (annotated):



The specification of the Asserted Patents is extremely short, and teaches very little about the claimed subject-matter.  For instance, the "Detailed Description of the Invention" takes up less than half a column of the '988 patent (Ex. A at 3:18-39), while much of the specification

consists of a discussion of three prior art patents (*id.* at 1:10-43).  The largest portion of the '988 specification is the "Summary of the Invention" section, which, with the exception of its first two sentences, consists entirely of a series of "objects of the present invention."  Those "objects" generally reproduce the claim language verbatim with no additional explanation or teachings.

The Asserted Claims are apparatus claims generally directed to a multi-part grille including a frame, linear bar grille,[2] and flexible mounting flange that includes through-holes and indented slots.[3]  Claim 1 is the only independent claim of the '988 patent.  Its dependent claims are generally directed to either: (i) structural elements (such as sheet rock screws, as in claim 3, or dimensions, as in claim 13); or (ii) installation steps or instructions (as in claims 2 & 14).[4]

The '305 patent is a continuation-in-part of the application that ultimately issued as the '988 patent.  The '305 specification contains limited disclosure beyond that of the parent '988 patent, with the only additional portions being: (i) the "Related Applications" section (Ex. B at 1:5-6); (ii) Figures 7-10A and the accompanying description (*id.* at 3:45-54; 4:13-46); and (iii)

---

[2] The Asserted Claims use the term "grille" to describe both the overall claimed apparatus, as well as to recite a sub-part, which appears to be the series of bars that comprise the core of the apparatus, as shown in Figure 5.

[3] Plaintiffs characterize their "inventions" as "generally directed to a *one piece* dry wall extrusion grille."  (Dkt. No. 31 at 2.)  The claims do not require a "one piece" grille, and the specification does not teach a "one piece" grille.  On the contrary, it describes at least one embodiment of "the invention" as "comprising four mitered pieces."  (Ex. A at 3:18-20; Figs. 1 and 2 (illustrating multi-piece construction).)  Moreover, the '305 specification describes an embodiment in which "[t]he frame 126 includes mounting strips 128 that . . . can be made as an integral part of the frame 126 in a one piece extrusion."  (Ex. B at 4:23-26.)  In other words, one embodiment of one element (the frame) can be formed in "one piece"; that is not an invention directed to "one piece dry wall extrusion grille."

[4] The relevant art for the Asserted Patents is building and construction materials, and in particular, accessories such as grilles or grates for finishing drywall applications.  A person of ordinary skill in that art would have been an individual with at least a Bachelor's degree in engineering, or at least 3 years of experience designing, manufacturing, installing, and/or finishing drywall using accessories such as grilles or grates.  Plaintiffs do not address the actual qualifications that a person of ordinary skill would have had at the time of the alleged inventions.  Instead, Plaintiffs assert only that "[o]ne of ordinary skill in the art at the time of the invention would be someone with either *the proper education or experience* in the field of HVAC installation, general contracting, Mechanical Engineering, HVAC Finishing, spackling and Architecture."  (Dkt. No. 31 at 5.)  But Plaintiffs do not define "proper education or experience," nor what is meant by "spackling and Architecture."

additional "object[s] of the present invention" related to Figures 7-10A (*id.* at 3:6-30).  The '305

patent has three independent claims.  Those are virtually identical to Claim 1 of the '988 patent,

except that Claim 1 of the '305 patent adds "wherein said extrusion grille is used with a fixed

core, a core welded directly to said frame, or a removable core"; claim 10 adds "said frame being

extended to at least ¾""; and claim 11 adds "mounting strips attached to a bottom of said frame."

The dependent claims of the '305 patent are generally directed to: (i) structural elements (such as

dry wall screws or devices relating to mounting strips); (ii) dimensions of the apparatus or a

portion thereof (as in claim 8); or (iii) installation steps or instructions (as in claims 2, 4, and 9).

## II.    LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION

This Court has accurately summarized the legal standards governing claim construction

in multiple opinions, including *Soter Technologies, LLC v. IP Video Corporation*, 20 CV 2989

(GRB)(AKT), 2021 WL 4553188 (E.D.N.Y. Oct. 5, 2021).  Defendant is therefore cognizant that

the Court is well-acquainted with those standards, and does not reproduce them here.  However,

because Plaintiffs have misrepresented the indefiniteness standards in their opening brief,

Defendant addresses the proper standards that should guide that inquiry here.

The Patent Act requires that patent claims must "particularly point[] out and distinctly

claim[] the subject matter" regarded "as the invention."  35 U.S.C. § 112(b).  The Supreme Court

has held that Section 112(b) requires a claim to "inform those skilled in the art about the scope of

the invention with reasonable certainty."  *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898,

910 (2014).  If it fails to do so, then the claim is indefinite.  *Id.* at 901.  In contravention of this

Supreme Court precedent, Plaintiffs incorrectly contend that Defendant has the "'heavy burden'"

to show that claims are "insolubly ambiguous.'"  (Dkt. No. 31 at 9.)  That standard was expressly

overruled in *Nautilus* and replaced with the easier-to-prove "reasonable certainty" test.  572 U.S.

at 911 (abrogating the "insolubly ambiguous standard"); *see also Koninkliljke Philips N.V. v. Zoll*

4

*Med. Corp.*, 656 F. App'x 504, 527 (Fed. Cir. 2016) ("[I]t must be admitted that the 'insolubly ambiguous' standard is a harder threshold to meet than the post-*Nautilus* standard.").

Plaintiffs also assert that "[i]ndefiniteness arguments are disfavored at the claim construction stage."[5]  (Dkt. No. 31 at 9.)  Not so.  As the Federal Circuit has recognized, "indefiniteness is a question of law and in effect part of claim construction."  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012); *see also Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1364 (Fed. Cir. 2015) (indefiniteness inquiry may be "intertwined with claim construction"); *Chewy, Inc. v. Int'l Bus. Machs. Corp.*, No. 21-cv-1319 (JSR), 2022 WL 1500624, at *1 (S.D.N.Y. May 12, 2022) (noting that indefiniteness was addressed at the *Markman* hearing and that claim was held indefinite in the *Markman* Order).

## III.   DEFENDANT'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED

### A.  The Preamble Is Not Limiting

| Claims | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| '988 patent, cl. 1; '305 patent cl. 1, 10, 11 | A grille used for dry wall, including sheet rock, gypsum, cement board, wall board, plaster and green board, which is formed via the process of a high pressure force pushing material through a die. | Non-limiting; alternatively, "a product-by process limitation directed to a grille, for use with dry wall, which was made at least in part by a process of forcing material through a die to form a desired shape" |

Under the leading Federal Circuit case addressing how to construe preambles—which Plaintiffs never mention in their opening brief—the preamble should be construed as non-limiting.  *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (2002).  If the Court is nonetheless inclined to construe the preamble as limiting, then Defendant's alternative

---

[5] In support of this proposition, Plaintiffs rely on *Nazomi Communications, Inc. v. Arm Holdings, P.L.C.*, 403 F.3d 1364 (Fed. Cir. 2005)—but that case did not relate to indefiniteness arguments, and instead concerns the issue of whether prior-art-based invalidity arguments should be considered during *Markman*.  *See id.* at 1368-69.  The *Phillips* decision (also cited by Plaintiffs) likewise does not address when indefiniteness should be resolved.

construction should be adopted, at least because Plaintiffs' construction fails to reflect that the claim is product-by process, improperly requires that the entire grille be made by extrusion, and improperly requires the use of a "high pressure force."

The Federal Circuit has identified several "guideposts" to help determine when a preamble may limit claim scope:  (i) use in a Jepson claim;[6] (ii) use as the antecedent basis for a limitation in the claim body; (iii) it recites "additional structure or steps underscored as important by the specification"; and (iv) the patentee relied "on the preamble during prosecution to distinguish the claimed invention from the prior art."  *Id.* at 808-09.  None of those applies here. The preamble is not part of a Jepson claim, and it is not the antecedent basis for any limitations in the claim body.[7]  The specification does not identify either "extrusion" or use in dry wall applications as important.  And the patentee never relied on the preamble during prosecution to distinguish the prior art.  (*See* Exs. C & D.)  The preamble is thus not limiting.

Moreover, the Federal Circuit recently reaffirmed that "a preamble is not limiting 'where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention.'"  *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1328 (Fed. Cir. 2019).  That description applies here—the claim body defines a structurally complete invention (including a frame, a linear bar grille, pre-perforated through

---

[6] "A 'Jepson' claim is one that contains (1) a preamble that recites an old device, process, or combination, (2) a transition phrase such as 'wherein the improvement comprises,' and (3) a body which states the new elements or improvements upon the old device, process, or combination."  *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, No. 20-CV-06469-EMC, 2021 WL 3037700, at *3 (N.D. Cal. July 19, 2021).

[7] The preamble phrase "dry wall extrusion grille" does not appear in the body of any claims; certain dependent claims of the '988 and '305 patents refer to the "extrusion grille" of a preceding claim, and the body of claim 1 of the '305 patent refers to "said extrusion grille"—but those references only underscore that the entire preamble phrase is not necessary to give life or meaning to the claims, that the preamble itself is not used as the antecedent basis for anything, and that when a portion thereof is referred to elsewhere in the claims, it could be replaced with a generic term like "apparatus" or "device" without changing the meaning of that limitation.

holes, indented slots, and a flexible mounting flange), while the preamble merely states an intended purpose (using the claimed apparatus with dry wall) and a method of making the structurally complete assembly (extrusion).  Plaintiffs identify no structural elements in the preamble, and identify no instance when such a preamble was construed as limiting.

Instead, Plaintiffs note that the phrase "dry wall extrusion grille" appears multiple times in the specification.  (Dkt. No. 31 at 5.)  The mere presence of a preamble term in the specification does not render it limiting, and Plaintiffs offer no authority for that proposition. Moreover, Plaintiffs incorrectly state that "[t]he specification shows all enumerated objects of the invention relate to 'a dry wall extrusion grille.'" (*Id.* at 7.)  But the recitation of "object[s] of the present invention" never once refers to "a dry wall extrusion grille"; certain of these "objects" instead refer to "extrusion grille," (Ex. A at 1:47-2:67), which could be replaced with any generic structural term (like "device") without changing its meaning.

Plaintiffs also contend that the prosecution histories of the Asserted Patents establish that the preamble is limiting.  Not so.  *Catalina* requires that, for the prosecution history to support a limiting construction for a preamble, the patentee must have distinguished the prior art based on the preamble itself.  That did not occur.  For instance, Plaintiffs reference the patentee's response dated May 31, 2016.  (Dkt. No. 31 at 5.)  In that response, the patentee argued that Pettit was "a register which does not have vanes or linear bars, nor does it have cross members," and that it failed to "teach a flexible edge" or "indented slots."  (Ex. C at 166.)  The patentee did not attempt to distinguish Pettit based on the preamble (i.e., that Pettit taught a non-extrusion process or was intended for non-drywall applications)—nor could the patentee have done so, because Pettit teaches a product made by the process of extrusion that is used for "dry wall" applications.  (Ex. E at Abstract; cls. 1, 2; col. 2:44-47.)

As for the prosecution history of the '305 patent, Plaintiffs assert that the patentee argued "that the prior art does not teach a dry wall extrusion grille." (Dkt. No. 31 at 7.)  But Plaintiffs omit key language and context.  In fact, the patentee argued that prior art reference Simblest "does not teach a dry wall extrusion grille *having a frame*," because it was a "louver," not a "linear ba[r] grille," and therefore it could not "use cross members" as claimed.  (Ex. D at pg. 192; *see also id.* at 245.)  The preamble was not used as the basis to distinguish Simblest or any other prior art.  And while Plaintiffs contend that the patentee "defined the term 'dry wall extrusion grille'" during prosecution of the '305 patent, (Dkt. No. 31 at 6-7), that is inaccurate. Instead, the Examiner noted that, strictly for "purpose of examination, the term 'extrusion grille' is construed as 'grille assembly comprising at least one extruded component." (Ex. D at 206.)  In response, the patentee merely stated that it "would agree with the Examiner interpretation." (*Id.* at 242.)  But agreeing with an Examiner's interpretation of a portion of the preamble strictly for "purpose of examination" does not fall within the *Catalina* guideposts.

Plaintiffs cite a single case in which a preamble was found to be limiting:  *Pacing Technologies, LLC v. Garmin International, Inc.*, 778 F.3d 1021 (Fed. Cir. 2015) ("*Garmin*"). (Dkt. No. 31 at 4-5.)  *Garmin* is distinguishable in multiple respects.  First, the *Garmin* Court held that the preamble terms there were "necessary to understand positive limitations in the body of the claims." *Garmin*, 778 F.3d at 1024.  That is not the case here, and Plaintiffs do not contend otherwise.  Second, as Plaintiffs acknowledge, the specification in *Garmin* "clearly and unmistakably limited" the preamble phrase "a repetitive motion pacing system" by noting that the only way to accomplish the objects of the present invention was through "a repetitive motion pacing system that includes . . . a data storage and playback device adapted to producing the sensible tempo." *Id.* at 1025.  There is no comparable language in the Asserted Patents.

If the Court is inclined to construe the preamble as limiting (which, for the reasons discussed above, it should not do), then it should be construed as a product-by-process limitation—i.e., "one in which the product is defined at least in part in terms of the method or process by which it is made." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 158 n.* (1989).  There is no question that the preamble defines the claimed apparatus in terms of how it is made, as confirmed by Plaintiffs' own construction, which emphasizes that the claimed apparatus is "***formed via the process*** of a high pressure force pushing material through a die." (Dkt. No. 31 at 5.)  In addition, the Court should reject Plaintiffs' proposal that the entire grille must be formed by extrusion; that proposal finds no support in the specification, and it contradicts the prosecution history, in which the patentee stated that the term extrusion grille "does not necessarily mean that all parts are formed by a process of extrusion."  (Ex. D at 42.) Finally, the Court should reject Plaintiffs' proposal that the "force" required to produce the claimed product be "high pressure" for three reasons.  *First*, as discussed below, a subjective term like "high" is indefinite, because a person of skill in the relevant art would not be reasonably certain of where to draw the line between what constitutes a "high" pressure force and one that is not "high."  *Second*, the word "pressure" does not appear anywhere in the Asserted Patents.  *Third*, Plaintiffs cite no extrinsic evidence to support their proposed construction, and with apparently good reason:  at least one technical dictionary definition from the relevant period defines extrusion as "[t]he process of forming continuous shapes by forcing a molten plastic material through a die," without any reference to "high pressure."  (Ex. F.)

### B.   "Flexible Mounting Flange"

| Claims | Plaintiffs' Construction | Defendant's Construction |
| --- | --- | --- |
| '988 patent, cl. 1; '305 | Understood by one of ordinary skill in the art and defined in the specification as a flange that can be shaped or formed to follow the contour of | A mounting flange that is capable of being bent, |

| patent cl. 1, 10, 11 | a wall or ceiling surface with sufficient strength to hold and provide a structural base for secure mounting of a linear bar grille core. | usually without breaking; easily bent |
|---|---|---|

Defendant proposes that this term be construed in accordance with its plain and ordinary meaning—namely, "a mounting flange that is capable of being bent, usually without breaking; easily bent." By contrast, Plaintiffs' proposed construction takes a straightforward phrase that is used consistently with its plain, ordinary, and commonly understood meaning, and rewrites it completely. Plaintiffs appear to contend that the patentee acted as a lexicographer by "defin[ing] in the specification" what is meant by this term, but nothing supports that interpretation. Indeed, the specification and prosecution history strongly support Defendant's construction.

**1. Plaintiffs' Construction Is Contrary to the Intrinsic Record**

As this Court has noted, claim "construction 'begins and ends' with the claim language itself." *Soter*, 2021 WL 4553188, at *1-2 (quoting *Renishaw PLC v. Marposs Soieta' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) ("[I]n all aspects of claim construction, 'the name of the game is the claim.'"). The Asserted Claims describe the "flexible mounting flange" purely in terms of its location (i.e., "between a top and bottom edge of the frame extending outwardly from said frame") and certain elements found therein (i.e., "small recesses in said flexible mounting flange that receive plaster, joint compound, or mud"). (*See, e.g.*, Ex. A, cl. 1.) The claims are devoid of any reference to the concepts that Plaintiffs seeks to import, including (i) "follow[ing] the contour of a wall or ceiling surface," (ii) "sufficient strength to hold and provide a structural base"; or (iii) the relationship between the flange and a "linear bar grille core." Indeed, while certain claims refer to a "core," that "core" is claimed solely with respect to its structural relationship to the ***frame***—a separate claim element. (*E.g.*, Ex. B at cl. 1 (referencing "a fixed core, a core welded ***directly to***

*said frame*, or a removable core").)  The claimed "flexible mounting flange" thus has nothing to do with the "mounting of a linear bar grille *core*," as Plaintiffs propose.

Plaintiffs' proposed construction is also contrary to the specification.  The term "flexible mounting flange" is never explicitly defined in the specification; instead, it appears outside the claims in only two places in the '988 patent.  *First*, the '988 specification notes that "[i]t is an object of the present [sic] for the extrusion grille to comprise [sic] flexible mounting flange that fasten [sic] the grille to uneven wall surfaces."  (Ex. A at 2:24-26.)  *Second*, the '988 specification notes that "grille 30 has . . . a flexible mounting flange 36 that is used for fastening to a wall or ceiling with perforated through holes 40."  (*Id.* at 3:22-25.)  Neither of those off-handed references satisfies the "exacting" standards required for lexicography, which are met only when the patentee "clearly set[s] forth a definition of the disputed claim term" and "clearly express[es] an intent to define the term."  *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014).  Indeed, those references have nothing to do with Plaintiffs' proposed construction, which attempts to import terms that do not appear in the specification, such as "contour of a wall or ceiling surface," "structural base," and "linear bar grille core."

The '305 patent specification similarly does not define "flexible mounting flange," and its few scattered uses of that phrase establish that Plaintiffs' proposed construction should be rejected.  For instance, consistent with the '988 patent, the '305 patent notes that one "object of the present invention [is] for the flexible mounting flange to be used for fastening to a wall or ceiling with pre-perforated through holes."  (Ex. B at 1:57-59.)  No reference is made to the "contour" of those surfaces or the "strength" required for mounting.  In addition, the '305 patent directly undermines Plaintiffs' proposed construction, by providing that for one embodiment, "the mitered corners of the flexible mounting flange" can "be spot welded for additional

11

strength."  (*Id.* at 1:64-2:2.)  In other words, the "flexible mounting flange" as claimed—which is not described as being "mitered" or "welded"—can be made stronger through welding.  This is the only passage in either Asserted Patent that mentions "strength" of the "flexible mounting flange," but it does not define that term, much less as Plaintiffs propose.

Plaintiffs also contend that the claimed apparatus "must have exceptional strength using aluminum material-thus enabling safe use in ceiling applications."  (Dkt. No. 31 at 8.)  That contention could not be more at odds with the intrinsic record.  The claims do not require that the claimed grille have "exceptional strength" (whatever that means), do not require (except in dependent claims) that the grille be made of "aluminum," and make no mention (except in dependent claims) of ceiling applications.  Plaintiffs never explain how the use of aluminum is necessarily incompatible with a "flexible mounting flange," or how the use of flexible materials would necessarily result in a product that could not be used in ceiling applications.  Moreover, the specification clarifies that "exceptional strength" comes not from the nature of the "mounting flange," but rather from "a fully welded construction that provides exceptional strength for mounting in both walls and ceilings," which can be furthered enhanced by the mitering of pieces *of the frame* together.  (Ex. A at 1:58-61, 2:5-7; Ex. B at 1:64-2:2, 2:14-16.)  Claims 6 and 8 of the '988 patent are directed to those particular *frame* embodiments—but Plaintiffs **have chosen not to assert those claims.**

The specification strongly supports Defendant's construction, by emphasizing that the "flexible mounting flange" is designed to allow for installation onto "uneven" surfaces.  (Ex. A at 2:24-26; Ex. B at 2:32-34.)  In other words, the mounting flange is capable of bending or flexing to accommodate uneven wall surfaces.  This is consistent not only with the plain and ordinary meaning of this term, but also with the prosecution history—which Plaintiffs completely ignore.

For instance, the Examiner rejected the then-pending claims of the '988 patent application over Pettit, which disclosed a "mounting flange which is ***capable of bending*** to be installed within a hole in a wall." (Ex. C at 48.) In response, the patentee argued that Pettit did "not teach a flexible edge due to the use of right angle tabs" (*id*. at 66); in other words, those tabs restricted the ability of the edge to bend easily, rendering it inflexible.

Similarly, as noted above, the pending claims of the '305 patent application were rejected over the Simblest reference. (Ex. D at 160.) The patentee argued that Simblest, which was made of "metal," never specifically taught that "that the mounting flange is flexible"—i.e., that a metal mounting flange might be flexible or inflexible. (*Id.* at 192.) The Examiner then noted that a different prior art reference, Aggson, taught a flexible mounting flange because its "resilient flange 30"—which, through its ability to bend without breaking—would "provide effective mounting surfaces even if there is a misalignment with the surfaces to which the frame is mounted without leaving a gap." (*Id.* at 210.) The Examiner and patentee thus recognized that a flexible mounting flange could accommodate uneven surfaces by bending without breaking (i.e., by being "resilient"), just as Defendant proposes.

### 2. Plaintiffs' Construction Is Contrary to the Extrinsic Record

Plaintiffs argue that their proposed construction "is the only definition to make logical sense to a person of ordinary skill in the art." (Dkt. No. 31 at 8.) But Plaintiffs offer only attorney argument that is contrary to multiple dictionary definitions defining "flexible" as Defendant proposes. (*See,* Ex. G ("capable of being bent, usually without breaking; easily bent"; Ex. H ("able to bend or to be bent easily without breaking"); Ex. I ("a flexible object or material can be bent easily without breaking.").) This term should be construed in accordance with its universally recognized meaning, as exemplified by the foregoing extrinsic evidence. *See, e.g.*, *Seoul Semiconductor Co. v. Satco Prod., Inc.,* 570 F. Supp. 3d 59, 65 (E.D.N.Y. 2021).

13

### C.  Multiple Claim Terms Are Indefinite

#### 1.  "Small Recesses"

| Claims | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| '988 patent, cl. 1; '305 patent, cl. 1, 10, 11 | Not indefinite.  Understood by one of ordinary skill in the art and defined in the specification as indentations, or concave channels below surface plane. | Indefinite |

The term "small recesses" appears in all independent claims as part of the phrase "said indented slots defined as small recesses."  "Small" is a subjective term of degree—it is not enough to have an "indented slot"; that "indented slot" must also be a "small recess."  When a term of degree is used, "the court must determine whether the patent provides some standard for measuring that degree."  *Biosig Instruments, Inc. v. Nautilus*, *Inc.* 783 F.3d 1374, 1378 (Fed. Cir. 2015).  Likewise, when a subjective term is used, "a court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]."  *Ernie Ball, Inc. v. Earvana, LLC*, 502 F. App'x 971, 980 (Fed. Cir. 2013).  That standard "must provide objective boundaries for those of skill in the art."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

Here, the specification provides no standard for determining when recesses qualify as "small," and no guidance as to what dimension(s), if any, are relevant to that determination (e.g., the angle of the slot, its depth, its width, etc.).  The terms "small" and "recesses" appear only in the claims of the Asserted Patents, and thus were not objectively defined in the specification.  Moreover, while Figure 3 illustrates "indented slots 38," (Ex. A at 3:25-27), and while Figures 7-10A of the '305 patent illustrate "indented slots" identified as elements 104, 124, 144, and 163, respectively, (Ex. B at 4:14-39), the Figures provide no scale or accompanying description of when or whether those slots constitute a "small recess."  Indeed, the indented slots 38, 104, 124, 144, and 163 shown in those Figures all have different depths, angles, and widths.  Given the

complete lack of guidance, "small recesses" is an indefinite term of degree.  *See, e.g.*, *Uni-Sys., LLC v. United States Tennis Ass'n Nat'l Tennis Ctr. Inc*., No. 17-CV-147(KAM)(CLP), 2020 WL 3960841, at *28-30 (E.D.N.Y. July 13, 2020) (construing the term "very small side load" as indefinite); *Intell. Ventures I LLC v. AT&T Mobility LLC*, No. CV 13-1668-LPS, 2016 WL 4363485, at *17 (D. Del. Aug. 12, 2016) (construing "large" and "small" as indefinite when "nothing in the claim language, specification, or prosecution history provide[d] any guidance" as to what those terms meant).

Plaintiffs attempt to excuse the lack of any objective boundaries for the term "small recesses" by asserting that this language was "requested by the Examiner."  That is not true.  To the contrary, ***the patentee*** added this language during prosecution.  The Examiner found that prior art reference Pettit taught "indented slots."  (Ex. C at 86.)  The patentee responded with a narrowing amendment to distinguish Pettit, stating that "said indented slots [are] defined as ***small*** recesses."  (Ex. C at 74, 78.)  This exchange confirms that the purported novelty of the claims is premised upon a supposed distinction between a "small recess" and all other types of indented slots, heightening the need for objective criteria that the Asserted Patents do not provide.

Plaintiffs alternatively contend that the Examiner "did not object" to the term "small recesses."  (Dkt. No. 31 at 10.)  But that is true in virtually every case in which an issued patent is held to be indefinite, and is no reason to overlook the lack of any objective standards for determining what constitutes a "small recess."  *See, e.g., Brazabra Corp. v. Ce Soir Lingerie Co.*, No. 1:18-CV-683-RP, 2019 WL 13136348, at *7 (W.D. Tex. Aug. 15, 2019) ("[W]hether the patent examiner flagged a claim term as indefinite is not conclusive or binding on this Court . . . ."); *Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 2d 747, 752 (E.D. Tex. 2013) (noting the lack of authority to support the proposition that "the absence of such an objection

15

during prosecution [by the patent examiner] should preclude a finding of indefiniteness during litigation"); *Intell. Ventures*, 2016 WL 4363485 at *17 n.12 (same); *Uni-Sys.*, 2020 WL 3960841 at *85 n.19 (finding term indefinite despite lack of examiner's objection to it).

Plaintiffs' own construction—"indentations, or concave channels below surface plane"— confirms the indefiniteness of this term, for two reasons. <u>First</u>, Plaintiff's construction does nothing to further limit the "indented slots" that must be "defined as small recesses," and thus improperly reads the words "small recesses" out of the claims. "[I]ndentations" merely repeats the word "indented slots" in a slightly different form, and "concave channels" appears synonymous with "indentations." Neither distinguishes "indented slots defined as small recesses" from "indented slots" standing alone. <u>Second</u>, Plaintiffs' construction ignores the term "small" entirely. Even if "indentations, or concave channels below surface plane" adequately defined "***recesses***," that would not clarify what size of "recess" qualifies as "***small***." Plaintiffs' attempt to sidestep indefiniteness by excising the indefinite limitation is improper, and should be rejected. *See, e.g., K–2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."); *see also Chef Am., Inc. v. Lamb–Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[C]ourts may not redraft claims, whether to make them operable or to sustain their validity.").

### 2. "Said Sheet Rock Screw"

| Claims | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| '988 patent cl. 4 | Not indefinite. Understood by one of ordinary skill in the art with industry nomenclature for fasteners with spiral threads for attachment to sheetrock, gypsum, wall board, green board, etc. | Indefinite |

This claim term is indefinite because the phrase "said sheet rock screw" lacks antecedent basis. "[A] claim could be indefinite if a term does not have proper antecedent basis where such

basis is not otherwise present by implication or the meaning is not reasonably ascertainable."

*Haliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Claim 3 of the '988 patent is directed to "[t]he extrusion grille of claim 1 further comprising sheet rock screws"—i.e., two or more sheet rock screws.  Claim 4, on the other hand, is directed to "[t]he extrusion grille of claim 3 wherein said frame is installed ***with said sheet rock screw before plaster or a joint compound is applied***"—i.e., just one sheet rock screw. There is a mismatch between the scope of claim 4 and claim 3 (from which it depends), because the express plural use of a claim term excludes a singular embodiment.  *See, e.g.*, *Superior Fireplace Co. v. Majestic Prods. Co*., 270 F.3d 1358, 1375 (Fed. Cir. 2001) (holding that changing a claim term from "rear walls" to "rear wall" improperly broadened the claim).  It is therefore unclear whether installation with just a single sheet rock screw would fall within the scope of this claim, or whether multiple sheet rock screws would be required, and claim 4 of the '988 patent is indefinite.  *See, e.g.*, *Imperium*, 920 F. Supp. 2d at 758-59 (finding claims indefinite where there was a discrepancy between the claim term "red pixel" and "red pixels"); *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:16-CV-505, 2017 WL 2672616, at *32-33 (E.D. Tex. June 21, 2017) (finding dependent claim to be indefinite when it recited a singular "boundary" and the claim from which it depends was directed to "boundaries").

### 3.   "Special Hardware or Tools"

| Claims | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| '988 patent, cl. 11 | Not indefinite.  Understood by one of ordinary skill in the art and defined as tools that would include sheet rock knife, Phillips screw driver or plaster knife. | Indefinite |

This term is indefinite because, like the term "small recesses," it is a subjective term of degree for which no objective standards are outlined in the specification.  The specification is entirely devoid of any insight into what constitutes "special hardware or tools," as opposed to

non-special hardware or tools.  Underscoring the uncertainty of this phrase, Plaintiffs' opening

brief contradicts their own proposed construction.  Plaintiffs contend that, during prosecution of

the '988 patent, the Examiner interpreted this term "as requiring a screwdriver type tool to install

the fasteners."  (Dkt. No. 31 at 11.)  In actuality, the Examiner noted that Pettit disclosed this

limitation because "a simple screw drive[r] provides attachment" of the device in Pettit.  (Ex. C

at 48.)  But Plaintiffs propose defining this term in the ***opposite way***—namely, that simple screw

drivers such as a Phillips-head constitute "special hardware or tools."  Indeed, Plaintiffs'

construction also contradicts the specification, which illustrates the claimed invention with

Phillips-head screws.  (*See, e.g.*, Ex. A at Figs. 5 and 6.)  Because claim 11 requires "***no special***

***hardware or tools***" for installation, and because Plaintiffs contend that a Phillips screw driver is

an example of "special hardware," their construction is at odds with the intrinsic record.  Claim

11 of the '988 patent thus fails to apprise a person of skill in the art of its scope with reasonable

certainty and is indefinite.[8]

### 4.   "Special Angled Edge"

| Claims | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| '988 patent, cl. 21, 22 | Not indefinite.  Understood by one of ordinary skill in the art and defined in the specification as providing a step or guide for a standard spackle knife or plaster knife to rest upon. | Indefinite |

The term "special angled edge" is indefinite because a person of ordinary skill in the art

would not be reasonably certain as to what constitutes a "special angled edge."  The term

"angled" typically implies that something is at a slant or angle with respect to the horizontal.

---

[8] In the Joint Claim Construction Chart, the parties disputed the construction for "accurately sized," which, as evidenced by Plaintiffs' proposed construction for that term, likewise implicates the concept of "special hardware or tools for installation."  (Dkt. No. 31 at 12.)  Whether claim 11 is indefinite turns on whether "special hardware or tools" is indefinite, and in Defendant's view, the Court need not separately address the term "accurately sized."

(*See, e.g.*, Ex. J ("[s]omething at a sharp angle, slant, or incline"); Ex. K ("not straight . . . or positioned at an angle").)  That is also how the '305 patent uses the term—i.e., to describe an edge that is at an angle with respect to the horizontal.  (*See,* Ex. B at 4:41-46; *see also* Figs. 10 and 10A.)  But Plaintiffs' construction rewrites this term, so that the special "angled" edge is essentially a non-angled edge, such as the flat top of a "step" that provides a straight edge for a standard spackle knife.  (Dkt. No. 31; *see also* FIGS. 3 & 4 (describing element 44 as a "special angled edge," although the edge depicted as element 44 is a non-angled, flat surface).)  These irreconcilably inconsistent references render this term indefinite.

### 5.   "Crisp, Clean Line Set Up"

| Claims | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| '988 patent, cl. 22 | Not indefinite.  Understood by one of ordinary skill in the art and defined in the specification as a smooth, uniform line. | Indefinite |

This term is indefinite because, like several terms discussed above, it is unclear what constitutes a "crisp, clean line set up."  This term is innately subjective and is neither defined by the language of the specification, nor objectively clear to a person of ordinary skill in the art. What one person of skill in the art might consider "crisp and clean" might easily be considered by another to be nothing of the sort.  *See, e.g., Datamize LLC v. Plumtree Inc.*, 417 F.3d 1342, 1350-51 (Fed. Cir. 2005) (concluding that "[i]n the absence of a workable objective standard, 'aesthetically pleasing' does not just include a subjective element, it is completely dependent on a person's subjective opinion" and finding that term was invalid as indefinite).  Claim 22 is essentially directed to the same concept as in *Datamize*—whether an aesthetically pleasing "line set up" can be achieved, which is entirely subjective.  Plaintiffs merely propose rewriting the term in their proposed construction, replacing the words "crisp" and "clean" with "smooth" and

"uniform"—without citing any basis for doing so—and discarding entirely the concept of a line *set up*. This proposed construction should be rejected, and the term should be found indefinite.

### 6.  "Said Frame Being Extended to at Least ¾""

| Claims | Plaintiffs' Construction | Defendant's Construction |
|---|---|---|
| '305 patent, cl. 10 | Not indefinite.  Understood by one of ordinary skill in the art and defined in the specification as the frame projected into a duct or wall extended by at least ¾". | Indefinite |

This term is indefinite because a person of ordinary skill in the art would not be reasonably certain of when a particular frame falls within its scope.  For instance, does the claimed frame extend ¾" from the core of the grille?  Or is it that the frame extends ¾" into an opening of a wall, as in claim 8 of the '305 patent (which claims a frame that "extends about ¾" deep into an opening")?  Or is it that the frame itself has a height of ¾", as described in the specification?  (*See* Ex. B at 3:7-9 ("It is an object of the present invention for the drywall extrusion grille frame to be extended.  The average height of the frame is approximately ¾".").)  The language of claim 10 provides no insight, and the other claims and written description are inconsistent.  In other words, claim 10 of the '305 patent defines a minimum dimension of the frame, but provides no guidance as to how to measure that dimension.  Plaintiffs' proposed construction does nothing to clear up this confusion; it defines this term to mean "the frame projected into a duct or wall extended by at least ¾"" (Dkt. No. 31 at 14-15.)  It is unclear whether this construction means that the frame itself projects ¾" into a wall or duct, or what the basis is for this construction, particularly given that Plaintiffs reference only claim 13 of a different patent (the '988 patent), which uses different terminology.

### IV.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the above constructions be adopted by the Court, and that all Asserted Claims be found indefinite.

Dated: October 31, 2022

Respectfully submitted,

DAYUS REGISTER & GRILLE, INC.
By its attorneys

*/s/ Edward L. Tulin*
Andrew D. Gish (Bar No. 4918454)
   andrew@gishpllc.com
Marti A. Johnson (Bar No. 4180709)
   marti@gishpllc.com
Raymond J. Bilderbeck (Bar No. 4883328)
   ray@gishpllc.com
Edward L. Tulin (Bar No. 4489142)
   edward@gishpllc.com

GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
(212) 518-2000

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2022, I caused a true and correct copy of the foregoing document and exhibits referenced therein, to be filed by the Court's CM/ECF filing system, which will send electronic notification of such filing to all counsel of record, and that a copy of the foregoing has also been emailed to counsel for Plaintiffs.

/s/ *Edward L. Tulin*
Edward L. Tulin